## A10A1005. ANDERSON et al. v. MOUNTAIN MANAGEMENT SERVICES, INC.
### (702 SE2d 462)

ADAMS, Judge.

In this nursing malpractice case, the trial court granted the defendant's motions to exclude the plaintiffs' two expert witnesses — a doctor and a nurse. We granted interlocutory review and reverse with regard to the nurse.

The record shows that on September 6, 2002, 77-year-old Sarah Anderson, accompanied by her husband Grady, went to see a doctor at her regular family practice clinic in LaFayette, which she had visited on numerous occasions over the prior six years. She was greeted by Nurse Kimi Crump, LPN, who led Anderson to the scales to be weighed. Sarah's medical file showed that she had several risk factors for falling such as complaints of dizziness, a history of vertigo, obesity, gait disorder, prescription drug use, and other problems. Anderson asserts that, nevertheless, Crump failed to assess Sarah's current condition or discuss with Sarah how she was feeling or what Sarah's complaints were that brought her to her doctor's office. When Anderson stepped on the scale, Crump was holding a pen in one hand and Sarah's purse and her medical chart in the other hand. As Crump weighed Sarah, Sarah stepped off the scale, fell, and broke her hip in four places. Crump saw Anderson fall.

Sarah and Grady Anderson brought suit against several defendants including Mountain Management Services, Inc. — Crump's employer.[1] In the complaint, the Andersons alleged the defendants knew that Sarah had various ailments that were well known by the medical and nursing profession to increase the risk of falling; that her medical chart indicated risk factors of falling; that Sarah gave a medical history of dizziness when she arrived for treatment; that she was not properly attended while standing on the scale; and that the failure to properly attend her, which allowed her to fall, was a breach of the standard of care of nurses. The complaint specifically alleges that based on their knowledge of Sarah's condition, the defendants "should have taken action to prevent the plaintiff Sarah Anderson from falling from the scale while she was under the care and treatment of the defendants."[2]

Attached to the complaint, the Andersons offered the affidavit of Beverly I. Pruitt, LPN, and Dr. Robert Pieroni. Pruitt averred that Crump was negligent in failing to make an evaluation and assess-

---

[1] The other defendants have been dismissed, and Mountain is the sole remaining defendant.

[2] The same allegations were made in the parties' consolidated pre-trial order, which was filed on October 10, 2007.

ment of Sarah's ability to stand, walk and step on the scale and in failing to provide appropriate supervision and control of her patient as she was getting on and off the scale. Dr. Pieroni averred that Crump knew or should have known that Sarah had several risk factors of falling and that she should have taken action to prevent Sarah from falling when being weighed. Both Pruitt and Dr. Pieroni offered these same opinions in their depositions.

Sarah died on January 16, 2008, and Grady Anderson was appointed as executor of her estate and added to the suit in that capacity.

During the litigation, Mountain moved to disqualify Dr. Pieroni on the ground that he had no recent experience or professional knowledge about the standard of care applicable to a nurse weighing a patient. Mountain later moved in limine to exclude Pruitt's testimony on the ground that she had not "rendered the treatment at issue" sufficiently during three of the five years before the alleged malpractice. Mountain asserted that the "treatment at issue" was "weighing patients in a family practice setting." On May 11, 2009, the trial court granted both of Mountain's motions.

"In determining the admissibility of expert testimony, the trial court acts as a gatekeeper, assessing both the witness' qualifications to testify in a particular area of expertise and the relevancy and reliability of the proffered testimony. [Cit.]" *HNTB Ga. v. Hamilton-King*, 287 Ga. 641, 642 (1) (697 SE2d 770) (2010). "The issue of the admissibility or exclusion of expert testimony rests in the broad discretion of the court, and consequently, the trial court's ruling thereon cannot be reversed absent an abuse of discretion." *Cotten v. Phillips*, 280 Ga. App. 280, 283 (633 SE2d 655) (2006).

1. Under Georgia law, Pruitt's expert testimony is admissible in a medical malpractice action if at the time of the alleged malpractice, in addition to being a licensed professional, she had relevant knowledge and experience in *"the area of practice or specialty in which the opinion is to be given"*:

> [I]n professional malpractice actions, the opinions of an expert, who is otherwise qualified as to the acceptable standard of conduct of the professional whose conduct is at issue, shall be admissible only if, at the time the act or omission is alleged to have occurred, such expert: . . . (2) . . . had actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given. . . .

(Emphasis supplied.) OCGA § 24-9-67.1 (c). The subsection goes on

to explain one way[3] that sufficient actual knowledge and experience may be shown: that is, the purported expert must be shown to

> hav[e] been regularly engaged in . . . [t]he active practice of such area of specialty of his or her profession for at least three of the last five years, with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge, in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue. . . .

(Emphasis supplied.) OCGA § 24-9-67.1 (c) (2) (A).[4] This test has multiple parts, and the Supreme Court has restated the rule, which clarifies the difference between the "area of specialty" and the treatment allegedly performed negligently, and shows how they interrelate:

> [I]t is not sufficient that the expert have just a minimum level of knowledge in the area in which the opinion is to be given. Instead, the expert must have "regularly engaged in the active practice" of the area of specialty "in which the opinion is to be given" and must have done so "with sufficient frequency to establish an appropriate level of knowledge . . . in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue." [OCGA § 24-9-67.1 (c) (2) (A)].

*Nathans v. Diamond*, 282 Ga. 804, 806 (654 SE2d 121) (2007).

As was done in *Nathans*, it is necessary in this case to accurately state both the area of specialty at issue and what procedure or treatment was alleged to have been negligently performed. Id. at 806-807. Mountain admits that it made only one argument below — that neither Dr. Pieroni nor Pruitt established that they had sufficient experience in "rendering the treatment" at issue, which Mountain defined as "the manner in which Kimi Crump, LPN, took Ms. Anderson to be weighed and actually weighed her." And the

---

[3] One can also show knowledge and experience from teaching. See OCGA § 24-9-67.1 (c) (2) (B).

[4] It is clear from reading the entire Code section that the experience must have occurred in at least three of the five years before the alleged malpractice, which, here, is the day Sarah fell off the scale. See generally *Emory-Adventist v. Hunter*, 301 Ga. App. 215, 217 (687 SE2d 267) (2009).

hearing reflects that the court and Mountain focused on how often the two experts had weighed patients. Mountain claims Anderson never argued below that the treatment at issue was anything other than the simple act of weighing patients in the family practice setting. We disagree.

In this case, the area of specialty at issue and the treatment allegedly performed negligently can be gleaned from the complaint, the attached affidavits, and the pretrial order. See *Spacht v. Troyer*, 288 Ga. App. 898, 902 (3) (a) (655 SE2d 656) (2007) ("To determine 'the area of practice or specialty in which the opinion is to be given,' we look to the allegations of plaintiff's complaint . . ."). Although Anderson failed to respond in writing to Mountain's motions and Anderson's counsel was less than clear at the hearing on the motions, the complaint and other documents make clear that the alleged negligence was Crump's failure to take Sarah's current physical abilities into account, including several risk factors for falling found in her file, in order to be in a position to take necessary precautions to prevent a fall while weighing the patient. It follows that the area of specialty is managing patient safety while moving or directing patients.

Thus, Anderson does not have to show that Pruitt weighed patients consistently for three out of five years prior to the accident in this case, as Mountain argues. Rather, putting the case before us in the framework of OCGA § 24-9-67.1 (c) (2), the first issue is whether Anderson has shown that Pruitt "regularly engaged in the active practice" for at least three of the five years before Sarah's fall, of managing patient safety while moving or directing patients. The second issue is whether Pruitt worked in this area with sufficient frequency to establish an appropriate level of knowledge "in performing the procedure, diagnosing the condition, or rendering the treatment" at issue in the case — here, assessing Sarah's condition and taking appropriate cautionary steps to prevent her from falling while she was being weighed. See *Houston v. Phoebe Putney Mem. Hosp.*, 295 Ga. App. 674, 679 (673 SE2d 54) (2009) (Although expert nurse "never worked as a triage nurse in an emergency room," "the relevant area of nursing practice was the assessment and triage of acute patients, and [the expert's] affidavit and curriculum vitae showed that she had ongoing practical experience in the area of patient triage, as well as many years of practical and teaching experience in the area of supervising patient care, which presumably included assessing the acuteness of a patient's condition.").

The record shows that Pruitt was a registered nurse at the time of Sarah's September 2002 fall. For most of the preceding seven

years (through 2001[5]), Pruitt was employed as an outpatient surgery, recovery room, and pain clinic nurse for Baptist Medical Center. Her duties there were the same as her duties at her later employment as an outpatient surgery nurse at Northwoods Surgery Center. Pruitt took care of patients prior to and after surgery; evaluated patients "to see what their needs are and capabilities are" and "assist[ed] them through the process of surgery"; greeted patients in the waiting room after obtaining their medical chart; and sometimes reviewed the patient's chart before interacting with the patient depending on the case. She testified that her nursing experience included assessing the risk of falls by considering her past knowledge of the patient, whether the patient was elderly, whether the patient used assistance devices, how the patient walked, and how the patient was feeling that day. Following surgery, Pruitt took precautions to ensure that patients do not fall while leaving the premises, including using wheelchairs and escorting the patient to their car. Although patients were only weighed on "rare occasions" at her job, Pruitt testified about the safety precautions she takes when doing so. Pruitt testified that evaluating patients in terms of their physical abilities is "Nursing 101."[6]

The above information shows that for at least three of the five years prior to Sarah's fall, Pruitt worked as a nurse in a clinical setting, managing patient safety both prior to and after surgery. She easily meets the first requirement — that she regularly engaged in the active practice, for at least three of the five years before Sarah's fall, of managing patient safety while moving or directing patients. We also find that she clearly managed patient safety with sufficient frequency during that time frame to establish an appropriate level of knowledge for managing Sarah's safety while she was being weighed. Pruitt dealt with patients post-operatively as a regular part of her job and specifically dealt with their safety leaving the premises. We therefore conclude it was an abuse of discretion to conclude that she was not qualified under OCGA § 24-9-67.1. See *Carter v. Smith*, 294 Ga. App. 590, 591 (1) (669 SE2d 425) (2008) (expert competent to testify concerning what basic patient examination should entail, even if the expert physician had not "ordered an x-ray or CT scan or

---

[5] Starting sometime in 2001, Pruitt worked for maybe nine months as a "legal nurse consultant" for FHT Managed Care Services, LLP, performing insurance claim review. Beginning in April 2002, she worked in the DeKalb County Medical Examiner's office as a consultant.

[6] In addition, prior to her years at Baptist Medical Center, Pruitt spent approximately three years at the Northwoods Family Care Center where she greeted patients, weighed them, took their initial vital signs, and did the initial interview.

admitted anyone to the hospital in the past five years"). Compare *Collins v. Dickman*, 295 Ga. App. 601 (672 SE2d 433) (2008) (registered nurse not qualified as expert under OCGA § 24-9-67.1 where nurse had been in administrative position for five years, had not engaged in actual clinical practice for many years, and only taught 12 hours per week); *Vaughan v. WellStar Health System*, 304 Ga. App. 596 (696 SE2d 506) (2010) (no abuse of discretion to hold nurse not qualified where there was conflicting testimony regarding her applicable experience).

2. Dr. Pieroni does not have to have experience as a nurse to be qualified as an expert to testify as to the standard of care for nurses nor does it have to be shown that he actually weighed patients. Rather, subsection (D) of OCGA § 24-9-67.1 (c) (2) expressly provides that a doctor may be deemed qualified as such an expert if, during at least three of the five years before the alleged negligence, as a result of having "supervised, taught, or instructed nurses . . ." he "has knowledge of the standard of care" of the defendant health care provider "under the circumstances."

Although Dr. Pieroni has had a long career as a doctor and professor of medicine, Anderson has not cited any information in the record to show that for three of the five years prior to Sarah's fall, Dr. Pieroni "supervised, taught, or instructed nurses. . . ." The record shows that although he testified to being involved in those activities at times, he never correlated it with the appropriate time period.[7] Accordingly, we cannot say the trial court abused its discretion in determining that Dr. Pieroni was not qualified under OCGA § 24-9-67.1 (c) (2).

*Judgment affirmed in part and reversed in part. Smith, P. J., and Mikell, J., concur.*

DECIDED OCTOBER 13, 2010.

*Clifton M. Patty, Jr.*, for appellants.

---

[7] The record shows that as of the date of Sarah's fall, Dr. Pieroni was a licensed physician who had practiced in family medicine, internal medicine, and allergy and immunology; he is board-certified in those areas. For 20 or more years before 2002, he taught and practiced at Regional Medical Center in Tuscaloosa, Alabama. The bulk of the time was spent "clinically, . . . teaching, making rounds, seeing patients. . . ." He testified that at about the time of the accident, he did weigh the occasional patient, but he did not recall specific instances of weighing patients or assisting with weighing patients. He has not taught nurses how to weigh patients. He testified that information of that sort might be found in nursing manuals and that "nurses usually teach aides how to take blood pressure and how to weigh." Although he once taught at a nursing school, it was more than five years prior to Sarah's fall.

*Spears, Moore, Rebman & Williams, Sharel L. Van Sandt*, for appellee.