## A10A1563. ALSTON & BIRD LLP et al. v. MELLON VENTURES II, L.P. et al.

(706 SE2d 652)

MIKELL, Judge.

Alston & Bird LLP and two of its attorneys, W. Thomas Carter III, and Randolph A. Moore III, defendants below, appeal from the trial court's grant of partial summary judgment to their former clients, Mellon Ventures II, L.P.; Noro-Moseley Partners IV, L.P.; Noro-Moseley Partners IV-B, L.P.; SBK Capital, LLC; and GE Capital Equity Investments, Inc. (collectively the "appellees" or "investors"), in a lawsuit asserting several claims arising out of a soured financial transaction, including legal malpractice. Appellants also appeal from denial of their motion for partial summary judgment and from several procedural and evidentiary rulings. Finding error, we affirm in part and reverse in part.

> Summary judgment is appropriate if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). On appeal from the grant or denial of summary judgment, we conduct a de novo review, with all reasonable inferences construed in the light most favorable to the nonmoving party. A grant of summary judgment must be affirmed if right for any reason, whether stated or unstated. It is the grant itself that is to be reviewed for error, and not the analysis employed.[1]

So viewed, the evidence shows that, in 1999, Joan Lyman and Michael Pearson founded SecureWorks, a small computer software company ("SecureWorks" or "the company"). Lyman and Pearson later hired Jardon Bouska to join the company; these three are referred to herein collectively as the "managers." In 2000, the company sought additional capital; and in October 2000, Secure-Works agreed to a tentative deal whereby the investors would invest $20 million in the company. In return for the infusion of money, the managers would cede control of the company to the investors by issuing them "Class C Preferred Stock," which allowed the investors to outvote the common stock owned by the managers. After reaching this tentative agreement with the managers, Mellon, the lead inves-

---

[1] (Citations and punctuation omitted.) *Ins. Co. &c. of Pa. v. APAC-Southeast,* 297 Ga. App. 553 (677 SE2d 734) (2009).

tor, hired appellants Carter and Moore to draft the final documents.[2] Although only Mellon hired the attorneys and gave them their instructions, it was the custom in the venture capital world that the attorney retained by the leading investor would also represent other investors who might be invited by the leading investor to participate in the deal. Mellon brought GE Capital into the deal as an additional investor. As the transaction progressed, GE and other investors demanded additional terms, including a provision that would increase the number of the investors' preferred shares if the company missed revenue targets, changes to the managers' employment agreements, and a lock-up provision that would prevent the managers from selling their shares except in an initial public offering, even if the investors fired them from the company. As a result, a day or so before the closing, Lyman and the other managers requested that the contract be changed to provide them additional protection in the event that the investors later decided to sell out and to transfer their preferred stock to new investors with whom the managers might not feel comfortable. Mellon, on behalf of all the investors, agreed and asked appellants to revise the draft contract to make certain concessions in this regard to the managers. The result was Section 2.3 (b) of the Shareholders' Right of First Refusal and Co-Sale Agreement (the "Shareholders Agreement"), executed October 30, 2000, a section referred to as the "tag-along" clause.

Unfortunately, the tag-along clause conflicts with a provision of the corporate charter, the so-called "waterfall" clause. It is undisputed that, late in the process, someone with Alston & Bird "cut and pasted" the tag-along clause from an older contract for prior financing of the company. The transferred paragraph was not appropriate for the economics of the new financing. No one caught the mistake until after the closing.

A few years after the closing, the investors became convinced that the unilateral drafting error in the closing documents of the Class C Preferred Stock refinancing impaired the value of their investment and made it difficult to sell their interest in the company. Attempts to negotiate a settlement with the managers failed, and the investors, represented by new counsel, filed suit against the managers, seeking to reform the Shareholders' Agreement to reflect the original intent of the investors. In settlement of that lawsuit, the investors paid approximately $5.4 million to the managers. In return, the managers agreed to a redrafted tag-along clause. The

---

[2] Mellon initially retained partner Carter and then requested that Moore, then an associate and now a partner, also work on the transaction.

investors then sued Alston & Bird, Carter, and Moore, alleging legal malpractice in the preparation of the documents relating to the Series C Preferred Stock refinancing, especially the Shareholders Agreement.

The trial court initially appointed a special master to make reports and recommendations on discovery disputes. Later, the mandate of the special master was expanded, over appellants' objection, to include issues of law and fact. Appellants filed the present appeal following the trial court's grant of partial summary judgment and its adoption of the special master's report and recommendation. The trial court's judgment invalidated many of appellants' affirmative defenses. Almost all of the previous approvals of reports and recommendations, including those on discovery issues, have been appealed or cross-appealed.

1. We have a duty to inquire into our jurisdiction to entertain an appeal, even if no motion to dismiss has been filed.[3] Although a grant of partial summary judgment may be directly appealable under OCGA § 9-11-56 (h), "this statute does not provide for direct appeals from *all* grants of summary judgment, but must be read in conjunction with OCGA §§ 5-6-34 and 5-6-35 regarding the procedure for appeal to this court."[4]

Under OCGA § 9-7-1, the duties previously performed by a "master" in the superior court are now performed by an "auditor,"[5] although Uniform Superior Court Rule ("USCR") 46, which was adopted effective June 4, 2009, permits the trial court to appoint a special master to perform certain duties enumerated therein. OCGA § 5-6-35 (a) (1) requires that appeals from judgments of superior courts reviewing decisions of auditors be brought by application.[6] We conclude, however, that OCGA § 5-6-35 (a) (1) does not apply in this case because the statute specifically refers to decisions of "auditors" and not to those of "special masters." Therefore, we have jurisdiction to hear this appeal.[7]

2. Appellants first contend that the trial court erred in denying

---

[3] *Lane v. Morrison*, 226 Ga. 526 (175 SE2d 830) (1970); *Forest City Gun Club v. Chatham County*, 280 Ga. App. 219, 220 (633 SE2d 623) (2006).

[4] (Citation omitted; emphasis in original.) *Bullock v. Sand*, 260 Ga. App. 874, 875 (581 SE2d 333) (2003).

[5] See, e.g., *E. I. DuPont de Nemours & Co. v. Waters*, 287 Ga. 235, 236-238 (695 SE2d 265) (2010).

[6] See OCGA § 5-6-35 (b); *McCaughey v. Murphy*, 267 Ga. 64, 65 (1) (473 SE2d 762) (1996); *Carmichael v. Carmichael*, 248 Ga. 216, 218 (1), 221 (7) (282 SE2d 71) (1981); cf. *Sorrentino v. Boston Mut. Life Ins. Co.*, 206 Ga. App. 771, 772 (1) (426 SE2d 594) (1992) (direct appeal lies where auditor's report was confined to findings of fact). See also OCGA §§ 5-6-34 (b), 5-6-35 (a) (1), 9-7-1 et seq., 9-7-8, 9-7-13.

[7] See *Barnaby v. Scott*, 299 Ga. App. 691, 692 (1) (683 SE2d 333) (2009) (direct appeal from order adopting findings of special master).

their motion for summary judgment because appellees cannot prove proximate cause as a matter of law. We disagree.

> To prevail on a legal malpractice claim, a client must prove that (1) he employed the defendant attorney; (2) the attorney failed to exercise ordinary care, skill, and diligence; and (3) this failure was the proximate cause of damages to the client. To establish proximate cause, the client must show that but for the attorney's error, the outcome would have been different; any lesser requirement would invite speculation and conjecture. The defendant attorney is entitled to summary judgment if he shows that there is an absence of proof adduced by the client on the issue of proximate cause.[8]

In its June 12, 2009, order, the trial court concluded that appellants' motion for summary judgment should be denied because their arguments hinged primarily upon the depositions and affidavit of Joan Lyman, one of the managers, whose credibility is vigorously disputed. We find no error.

"[T]his Court has specifically held that a non-moving party may withstand a motion for summary judgment by submitting sworn testimony averring personal knowledge of the existence of a prior inconsistent statement made by a witness upon whose sworn testimony the movant relies."[9] Moreover, a witness's intent, expectation, or credibility are uniquely among those issues of material fact which are not appropriate for summary judgment.[10] Therefore, the trial court did not err in denying appellants' motion for summary judgment on the issue of proximate cause.

3. Appellants' second enumeration is that the trial court erred in granting appellees' motion for summary judgment on appellants' affirmative defenses of comparative negligence, failure to mitigate damages, waiver, estoppel, and voluntary payment.

(a) The trial court granted partial summary judgment to appellees on appellants' affirmative defense of comparative negligence as

---

[8] (Footnote omitted.) *Millsaps v. Kaufold*, 288 Ga. App. 44, 44-45 (653 SE2d 344) (2007). For a discussion concerning the distinction between proximate cause and cause-in-fact, see C. Mikell, Jury Instructions and Proximate Cause: An Uncertain Trumpet in Georgia, 27 Ga. St. Bar J. 60 (1990).

[9] (Citation, punctuation and footnote omitted.) *Carroll v. The Krystal Co.*, 303 Ga. App. 292, 295 (692 SE2d 869) (2010). The affidavits in opposition to Lyman's testimony mostly allege that she could not possibly have had personal knowledge of the matters to which she testified. But there does not seem to be the critical element required by the *Krystal* decision, i.e., knowledge of a prior inconsistent statement by Lyman.

[10] OCGA § 9-11-56 (c); see *State Farm Fire &c. Co. v. Morgan*, 258 Ga. 276 (368 SE2d 509) (1988).

to the Noro-Moseley and SBK investors because there was no evidence that these investors had seen the tag-along clause prior to the closing of the transaction.

As to the Noro-Moseley investors, however, the record reflects that appellants presented to the special master and to the trial court in a timely manner evidence which indicated that the Noro-Moseley investors had read the tag-along clause and that their attorney had reviewed the clause prior to the closing of the transaction. In light of this evidence, we conclude that the trial court erred in granting appellees' motion for partial summary judgment on appellants' affirmative defense of comparative negligence as to the Noro-Moseley investors,[11] and we reverse the trial court's ruling as to this issue.

With regard to the SBK investors, however, appellants cited evidence in support of their arguments below and in this Court that was not properly filed with the trial court prior to the hearing on the motion for partial summary judgment. That evidence was not considered by the trial court and will not be considered here. A trial court does not abuse its discretion by declining to consider evidence filed with the court by the party opposing summary judgment on the day of or after the hearing.[12]

We find no error in the trial court's grant of partial summary judgment to the SBK investors on this defense. We also find no error in the trial court's denial of appellees' motion for partial summary judgment on this defense regarding the remaining investors, nor in the trial court's failure to rely upon an additional ground urged by appellees in granting partial summary judgment to the SBK investors.[13]

(b) Regarding appellants' affirmative defense of mitigation of damages, we agree with the trial court, which approved the special master's findings on this issue, that appellees were entitled to summary judgment because appellants failed to present any evidence that the investors did not mitigate their damages as far as practicable by the use of ordinary care and diligence; failed to present evidence of the amount by which damages could have been mitigated; failed to present evidence that reasonable mitigatory options existed in fact and not merely in theory; and failed to present

---

[11] See *First Bancorp Mtg. Corp. v. Giddens*, 251 Ga. App. 676, 680 (5) (555 SE2d 53) (2001) (affirmative defense of comparative negligence when supported by evidence may be raised in legal malpractice case).

[12] *Brown v. Williams*, 259 Ga. 6, 7 (4) (375 SE2d 835) (1989); *Devore & Johnson, Inc. v. Bowen & Watson, Inc.*, 216 Ga. App. 63, 65 (3) (453 SE2d 67) (1994).

[13] See *Young v. Williams*, 285 Ga. App. 208, 209 (1) (645 SE2d 624) (2007); *Berman v. Rubin*, 138 Ga. App. 849, 851-854 (227 SE2d 802) (1976).

evidence that appellees could have avoided or lessened their damages without undue risk, burden, or humiliation.[14]

(c) Appellants have not made any argument here regarding their affirmative defenses of estoppel, waiver, and voluntary payment, and we consider these issues abandoned.[15]

4. In their third enumeration, appellants argue that the trial court erred in ordering them to return documents inadvertently produced by appellees during discovery. "Trial courts have broad discretion to control discovery, including the imposition of sanctions. Absent a clear abuse of discretion, a court's exercise of that broad discretion will not be reversed."[16]

It is undisputed that, during discovery, two e-mails containing communications from appellees' attorney in the managers' litigation concerning the issue of damages were produced to appellants. In its order of June 23, 2009, the trial court ordered appellants to return these communications to appellees for redaction and then reproduction to appellants and also prohibited appellants from using the privileged information contained in the e-mails at trial or for any other purpose.

We note that the only authority cited by appellants on this issue is a case from federal bankruptcy court which is merely persuasive and not binding upon this Court.[17] We rely instead on Georgia authority. "Under the common law of Georgia, as codified in OCGA §§ 24-9-21 (2), 24-9-24, and 24-9-25, the attorney-client privilege bars revelation, discovery, and testimony of a lawyer *except when waived by the client* or in very limited circumstances."[18]

Appellants produced no evidence showing that appellees waived their attorney-client privilege. The disclosure of these e-mails during document production by counsel did not preclude later objection to their use by appellees.[19] Therefore, the trial court did not abuse its discretion in ordering these documents returned to appellees.

---

[14] *Charles S. Martin Distrib. Co. v. Bernhardt Furniture Co.*, 213 Ga. App. 481, 483 (3) (445 SE2d 297) (1994); *Burton v. Key Capital Corp.*, 185 Ga. App. 394, 395 (364 SE2d 296) (1987).

[15] Court of Appeals Rule 25 (c) (2).

[16] (Citation and punctuation omitted.) *Expedia, Inc. v. City of Columbus*, 305 Ga. App. 450, 451 (699 SE2d 600) (2010).

[17] *McKeen v. Fed. Deposit Ins. Corp.*, 274 Ga. 46, 48, n. 1 (549 SE2d 104) (2001).

[18] (Citation and punctuation omitted; emphasis supplied.) *NationsBank v. SouthTrust Bank of Ga.*, 226 Ga. App. 888, 896 (2) (487 SE2d 701) (1997) (physical precedent only). See generally *Southern Guaranty Ins. Co. of Ga. v. Ash*, 192 Ga. App. 24, 25-27 (383 SE2d 579) (1989).

[19] *Associated Grocers Co-Op v. Trust Co. of Columbus*, 158 Ga. App. 115, 116-117 (3) (279 SE2d 248) (1981); see also *Kennestone Hosp. v. Hopson*, 273 Ga. 145, 148-149 (538 SE2d 742) (2000) (failure to object to discovery request from third party did not impliedly waive psychiatrist-patient privilege).

5. In their fourth and fifth enumerations of error, appellants complain of the trial court's disallowance of certain opinions of two of their expert witnesses.

"In determining the admissibility of expert testimony, the trial court acts as a gatekeeper, assessing both the [witness's] qualifications to testify in a particular area of expertise and the relevancy and reliability of the proffered testimony."[20] In this regard, the trial court is vested with discretion. "The issue of the admissibility or exclusion of expert testimony rests in the broad discretion of the court, and consequently, the trial court's ruling thereon cannot be reversed absent an abuse of discretion."[21] We have examined the proffered opinions of expert witnesses Bramlett and Thrasher and find that the trial court properly excluded them for the reasons set out in detail in the special master's report and recommendation and adopted by the trial court.

6. In their final enumeration of error, appellants argue that the trial court erred in appointing a private attorney as special master, over their objections, to issue opinions on substantive and evidentiary issues. We disagree.

By order of October 25, 2006, the trial court appointed the special master for discovery in this case. Appellants made no objections at that time to his appointment. Following extensive discovery overseen by the special master and the filing by the parties of motions for summary judgment, partial summary judgment, and motions seeking to disqualify certain expert witnesses and exclude certain expert opinions, the trial court referred these additional matters to the special master by an order entered on February 1, 2008 (the "February 1 referral"). The February 1 referral directed the special master to "review and consider the motions, conduct such proceedings with respect to the motions as he may deem appropriate, and *submit a written recommendation and report* to the Court as to the disposition of the motions."[22] Further, the February 1 referral provided that the parties would have the opportunity to file exceptions or objections to the special master's recommendations and report. Appellants then filed their motion to withdraw the February 1 referral of these additional matters to the special master. The trial court denied appellants' motion in its order of March 7, 2008.

(a) Appellants contend that, absent a specific statutory provision authorizing the referral of the summary judgment and evidentiary

---

[20] (Citation omitted.) *HNTB Ga. v. Hamilton-King*, 287 Ga. 641, 642 (1) (697 SE2d 770) (2010).

[21] (Citation and punctuation omitted.) *Anderson v. Mountain Mgmt. Svcs.*, 306 Ga. App. 412, 413 (702 SE2d 462) (2010).

[22] (Emphasis supplied.)

issues to a special master, the trial court abused its discretion in doing so. We disagree.

At the outset, we note that a judge's exercise of discretion in referring a matter to an auditor, and, by extension, a special master, will not be interfered with, absent abuse.[23] In addition, USCR 46, entitled "Special Masters," provides:

> Unless a statute provides otherwise, upon the motion of any party or *upon the court's own motion, the court of record may appoint a [special] master*: (a) to perform duties consented to by the parties; (b) *to address pretrial and post-trial matters that the court cannot efficiently, effectively or promptly address*; (c) to provide guidance, advice and information to the court on complex or specialized subjects, including, but not limited to, technology issues related to the discovery process; (d) to monitor implementation of and compliance with orders of the court or, in appropriate cases, monitoring implementation of settlement agreements; (e) *to investigate and report to the court on matters identified by the court*; (f) to conduct an accounting as instructed by the court and to report upon the results of the same; (g) upon a showing of good cause, to attend and supervise depositions conducted outside of the jurisdiction; and (h) *to hold trial proceedings and make or recommend findings of fact on issues to be decided by the court without a jury if appointment is warranted by (i) some exceptional condition*, or (ii) the need to perform an accounting, to resolve a difficult computation of damages or if the matter involves issues for which a special substantive competence would be beneficial.[24]

Appellants point out that USCR 46 was adopted effective June 4, 2009, after the trial court entered the orders complained of in this enumeration of error. But the same circumstances existed in *E. I. DuPont*,[25] and in that case, the Supreme Court of Georgia recognized the validity of USCR 46 without any specific legislative authorization.[26] The adoption of USCR 46, as approved by our Supreme Court,

---

[23] *Steenhuis v. Todd's Constr. Co.*, 227 Ga. 836, 837 (2) (183 SE2d 354) (1971); *Teasley v. Bradley*, 120 Ga. 373, 374 (47 SE 925) (1904); *Martin v. Foley*, 82 Ga. 552, 555 (9 SE 532) (1889).

[24] (Emphasis supplied.) USCR 46 (A) (1).

[25] Supra.

[26] Id. See also *Ins. Co. &c. of Pa.*, supra at 556 (special master made proposed findings of fact and conclusions of law on motion for summary judgment, which were adopted by the trial court).

without any legislative authority affirms the existence of the inherent judicial power of Georgia's courts, or at least the inherent power of her courts of record, to refer the matters complained of herein to a special master.[27] We caution the bench and bar, however, that there are limits to the power of a trial court to turn over allegedly complex litigation to special masters or auditors. Doing so too frequently infringes on the constitutional authority of the General Assembly and the Governor, advised by the Judicial Council, to decide how many judicial circuits Georgia should have and how many judges should staff those circuits. In the present litigation, the trial court may have already reached the limit of the proper use of a special master.

(b) Appellants' remaining arguments on this issue were not presented below and will not be considered for the first time on appeal.

> Our appellate courts are courts for the correction of errors of law committed in the trial court. Routinely, this Court refuses to review issues not raised in the trial court. To consider the case on a completely different basis from that presented below would be contrary to the line of cases holding, "He must stand or fall upon the position taken in the trial court." Fairness to the trial court and to the parties demands that legal issues be asserted in the trial court. Although under the "right for any reason" rule this court will affirm the correct ruling of a trial court on grounds not addressed below, we do not apply a "wrong for any reason" rule to reverse incorrect rulings on issues not raised or ruled upon in the trial court.[28]

For the above-stated reasons, we affirm the trial court's denial of appellants' motion to withdraw the February 1 referral to the special master.

*Judgment affirmed in part and reversed in part. Smith, P. J., and Adams, J., concur.*

---

[27] That the courts possess certain inherent powers, is a proposition which, so far as we know, has never been questioned. This means, then, when the constitution declares that the legislative, judicial, and executive powers shall forever remain separate and distinct, it thereby invests those officials charged with the duty of administering justice according to law with all necessary authority to efficiently and completely discharge those duties the performance of which is by the constitution committed to the judiciary, and to maintain the dignity and independence of the courts. (Citations omitted.) *Lovett v. Sandersville R. Co.*, 199 Ga. 238, 239 (33 SE2d 905) (1945).

[28] (Citations and punctuation omitted.) *Lowery v. Atlanta Heart Assocs.*, 266 Ga. App. 402, 404-405 (2) (597 SE2d 494) (2004).

DECIDED DECEMBER 16, 2010 —
RECONSIDERATION DENIED JANUARY 27, 2011 — 

*Cook, Noell, Tolley & Bates, Edward D. Tolley, Sutherland, Thomas W. Curvin, Amy K. Averill*, for appellants.

*Schklar, Ney & Heim, Edwin J. Schklar, William B. Ney, Magdalena M. Heim, J. James Johnson, Michael R. Peacock*, for appellees.