**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 19, 2014**

# In the Court of Appeals of Georgia

A13A2316. TOOMBS v. ACUTE CARE CONSULTANTS, INC.

MILLER, Judge.

Jacqueline Toombs brought the instant medical malpractice action against Dr. Bruce Friedman, nurse practitioner Gena Markwalter and Acute Care Consultants, Inc. (collectively the "Defendants"), alleging that they were negligent in providing medical care following her late husband's surgery and that this negligence led to his death.[1] The Defendants moved for summary judgment on the ground that no jury question remained following the disqualification of Toombs's sole expert witness. The trial court granted the Defendants' motion for summary judgment, and Toombs appeals from that order. Toombs contends that her expert met all the criteria of

---

[1] Toombs also sued Doctor's Hospital of Augusta Inc. and several other defendants who were involved in her husband's medical treatment. The hospital and other defendants were dismissed from this case.

OCGA § 24-7-702 (c)[2] in terms of education, training and experience. After a thorough review of the law and facts in this case, we reverse.

> On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citations and punctuation omitted.) *Campbell v. Landings Assn.*, 289 Ga. 617, 618 (713 SE2d 860) (2011).

So viewed, the evidence shows that, on September 18, 2006, Toombs's husband, Charles Toombs, Jr. suffered a chemical burn to his left foot while working at his job as a chemical technician. On September 23, 2006, Charles was admitted to Doctor's Hospital in Augusta, Georgia, where he underwent surgery to excise his wound and to apply a skin graft. Following his surgery, Charles was prescribed

---

[2] OCGA § 24-7-702 (c) is the successor, under the new Georgia Evidence Code, to former OCGA § 24-9-67.1, which was in effect at the time the defendants filed their motion to disqualify Oleksyk. Because the current Code section is substantively identical to its predecessor, our analysis here applies equally to the previous and current versions of the statute. See *Hankla v. Postell*, 293 Ga. 692, n. 1 (749 SE2d 726) (2013).

2

Lovenox, a medicine used to prevent blood clotting, because he was at high risk for deep vein thrombosis ("DVT").

Subsequently, Charles was readmitted to the hospital and underwent a second skin-graft surgery on October 4, 2006. Following his surgery on that day, Charles was examined by Dr. Friedman and nurse practitioner Markwalter. Dr. Friedman's post-surgery assessment and care plan provided that Charles would be increasingly mobilized in order to attempt to prevent DVT. Markwalter deposed that Charles's mobilization plan would have included turning side-to-side and sitting up in the bed, sitting on the side of the bed and moving his legs and arms. Dr. Friedman did not, however, prescribe Lovenox following Charles's second surgery.

On the day after his surgery, Charles was able to get out of the bed and sit in a chair. Occupational therapists also administered in-bed physical therapy that day to help increase Charles's range of motion. On October 6, 2006, the second day after his surgery, Charles stood up on crutches with the help of a physical therapist. Charles walked about 10 feet with assistance and use of the crutches before he told the therapist that he was in pain, felt dizzy, had difficulty breathing and wanted to return to his bed. Charles went into respiratory distress, stopped breathing and could not be

resuscitated. Charles died from a DVT blood clot that formed in his leg, broke loose and traveled to his lungs where it became a pulmonary embolism ("PE").

Toombs, subsequently filed this action, alleging that the Defendants were negligent in providing medical care to her husband following his surgery. Toombs supplemented her complaint with an affidavit from Dr. Michael S. Oleksyk, who opined that Charles was at significant risk for DVT and PE because he was over 40 years old and significantly obese, he had undergone surgery lasting more than 30 minutes under general anesthesia, he was bed-bound for more than 40 hours, and his leg was immobilized with an Ace wrap which restricted the venous blood flow in the leg. Dr. Oleksyk further opined that the Defendants' failure to evaluate Charles's increased risk of DVT and failure to take measures to decrease that risk fell constituted substandard care.

The Defendants filed a motion to disqualify Oleksyk on the ground that he was not qualified under OCGA § 24-7-702 (c) to testify regarding the standard of care applicable to the treatment of a post-surgical burn care patient who had undergone skin graft surgery. The trial court granted the Defendants' motion to disqualify Oleksyk from giving testimony regarding the standard of care applicable to Friedman

4

and Markwalter, and this Court denied Toombs's application for interlocutory review.[3]

In her sole enumeration of error, Toombs contends that the trial court erred in granting summary judgment to the Defendants. Specifically, Toombs argues that the trial court confused Georgia law as to the specialty or practice of medicine relevant to this case, and that OCGA § 24-7-702 (c) authorizes the admission of Oleksyk's stricken testimony. We agree.

> The issue of the admissibility or exclusion of expert testimony rests in the broad discretion of the court, and consequently the trial court's ruling thereon cannot be reversed absent an abuse of discretion. Under *Daubert*,[4] disputes as to an expert's credentials are properly explored through cross-examination at trial and go to the weight and credibility of the testimony, not its admissibility.

(Citations and punctuation omitted.) *Agri-Cycle, LLC v. Couch*, 284 Ga. 90, 93 (5) (663 SE2d 175) (2008).

---

[3] The Georgia Supreme Court also denied Toombs's subsequent petition for writ of certiorari. *Toombs v. Acute Care Consultants, Inc.*, 2012 Ga. LEXIS 1012 (Case No. S12C0931, decided Oct. 1, 2012).

[4] *Daubert v. Merrell Dow Pharmaceuticals*, 509 U. S. 579 (113 SCt 2786, 125 LE2d 469) (1993).

5

In order to survive the Defendants' motion for summary judgment on her medical malpractice claim, Toombs had to present expert testimony that the Defendants deviated from the applicable standard of care. See *Vaughan v. Wellstar Health System*, 304 Ga. App. 596, 602 (4) n. 20 (696 SE2d 506) (2010); *Bowling v. Foster*, 254 Ga. App. 374, 377 (562 SE2d 776) (2002). OCGA § 24-7-702 (c) sets forth the statutory criteria for the qualification of experts in medical malpractice cases. That statute pertinently provides:

> [I]n professional malpractice actions, the opinions of an expert, who is otherwise qualified as to the acceptable standard of conduct of the professional whose conduct is at issue, shall be admissible only if, at the time the act or omission is alleged to have occurred, such expert:
>
> (1) Was licensed by an appropriate regulatory agency . . . ; and
>
> (2) In the case of a medical malpractice action, had actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given as the result of having been regularly engaged in:
>
> (A) The active practice of such area of specialty of his or her profession for at least three of the last five years, with sufficient frequency to establish an appropriate level of knowledge, as determined

6

by the judge, in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue; or

(B) The teaching of his or her profession for at least three of the last five years as an employed member of the faculty of an educational institution accredited in the teaching of such profession, with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge, in teaching others how to perform the procedure, diagnose the condition, or render the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue; and

(C) Except as provided in subparagraph (D) of this paragraph:

(i) Is a member of the same profession . . .; and

(D) Notwithstanding any other provision of this Code section, an expert who is a physician and, as a result of having, during at least three of the last five years immediately preceding the time the act or omission is alleged to have occurred, supervised, taught, or instructed nurses, nurse practitioners, certified registered nurse anesthetists, nurse midwives, physician assistants, physical therapists, occupational therapists, or medical support staff, has knowledge of the standard of care of that health care provider under the circumstances at issue shall be competent to testify as to the standard of that health care provider.

7

. . .

OCGA § 24-7-702 (c).

Thus, in order to qualify as an expert in a medical malpractice case under

OCGA § 24-7-702 (c),

> the witness must (1) have actual knowledge and experience in the relevant area through either active practice or teaching and (2) either be in the same profession as the defendant whose conduct is at issue or qualify for the exception to the same profession requirement set forth in subparagraph (c) (2) (D). Under the exception, a proffered expert who is a physician is permitted to qualify as an expert as to a non-physician health care provider, but only if she has knowledge regarding the relevant standard of care as a result of having supervised, taught, or instructed such non-physician health care providers.

(Citation and punctuation omitted.) *Hankla*, supra, 293 Ga. at 694-695. Moreover,

> the expert must have regularly engaged in the active practice of the area of specialty in which the opinion is to be given and must have done so with sufficient frequency to establish an appropriate level of knowledge in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue.

8

(Punctuation and footnote omitted.) *Nathans v. Diamond*, 282 Ga. 804, 806 (1) (654 SE2d 121) (2007).

In order to determine whether OCGA § 24-7-702 (c) authorizes the admission of Oleksyk's stricken testimony, "it is necessary in this case to accurately state both the area of specialty at issue and what procedure or treatment was alleged to have been negligently performed." (Citation omitted.) *Anderson v. Mountain Mgmt. Svcs.*, 306 Ga. App. 412, 414 (1) (702 SE2d 462) (2010); see also *Cotten v. Phillips*, 280 Ga. App. 280, 284 (633 SE2d 655) (2006) (it is essential that expert have actual professional knowledge and experience in area of specialty in which the opinion is to be given). This Court has concluded that the area of specialty is dictated by the allegations in the complaint, not the apparent expertise of the treating physician. *Mays v. Ellis*, 293 Ga. App. 195, 198 (1) (b) (641 SE2d 201) (2007); see also *Anderson*, supra, 306 Ga. App. at 415 (1) (area of specialty at issue and treatment allegedly performed negligently can be gleaned from complaint and attached affidavit).

In this case, the complaint and Oleksyk's affidavit make clear that the alleged negligence was the Defendants' failure to evaluate, diagnose and properly treat Charles for an increased risk of DVT and PE while he was in the hospital and

9

immobolized with a bandage around his leg that restricted the blood flow. Accordingly, the area of specialty in this case concerns the standard of care applicable to DVT prophylaxis in a hospitalized patient who is at increased risk for DVT and PE.

Here, the evidence showed that Oleksyk had 22 consecutive years of experience during which he treated hundreds of people in the hospital who are at risk for DVT and PE. Additionally, the evidence showed that Oleksyk has been an assistant clinical professor at the Florida State University College of Medicine for three consecutive years, he has given over 450 lectures on DVT and PE during the past 10 consecutive years and he was one of the co-developers of the first DVT protocol in the United States. This evidence was more than sufficient to find that Oleksyk possessed the requisite knowledge and experience under OCGA § 24-7-702 (c) to offer an opinion on the area of specialty in this issue. Therefore, we hold that the trial court abused its discretion in granting the Defendants' motion to disqualify Oleksyk as an expert in this case.

Accordingly, we reverse the grant of summary judgment to the Defendants, which was based on the trial court's finding that Toombs had no competent expert who could testify as to a breach of the applicable standard of care.

10

*Judgment reversed. Barnes, P. J., concurs. Ray, J., concurs in judgment only.*