### A09A1840. CONNER et al. v. NORMAN SOSEBEE FUNERAL HOME.
(693 SE2d 534)

DOYLE, Judge.
Seven-year-old Derek James Conner was injured when he pulled a 400-pound granite headstone over onto his foot in the parking lot at Norman Sosebee Funeral Home. His parents, Joel and Kim Conner, filed suit against the funeral home and Cartersville Monument Company, Inc. The trial court granted summary judgment to Sosebee Funeral Home, and the Conners appeal that ruling.[1] Because the record reveals that questions of fact exist, we reverse.

---

[1] Cartersville Monument Company also filed a motion for summary judgment, but that motion is not before us in this appeal.

1. At the outset, we note that the Conners' failure to provide specific citations to the record as required by the rules of this Court has hampered our review of this case.[2] Court of Appeals Rule 25 (a) (1) requires that "[r]ecord and transcript citations shall be to the volume or part of the record or transcript *and the page numbers* that appear on the appellate record or transcript as sent from the trial court."[3] The Conners cite merely to the cover pages of depositions to support their factual assertions, rather than to specific pages of the depositions. We reiterate that "if we have omitted any facts or failed to locate some evidence in the record, the responsibility rests with appellant[s]. As we have often stated, it is not our function to cull the record on behalf of a party."[4]

2. On appeal, the Conners argue that the trial court erred in granting summary judgment to Sosebee Funeral Home. We agree.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[5]

So viewed, the evidence shows that the Conners attended a visitation service at Sosebee Funeral Home for a family member on March 2, 2006. While Mr. and Mrs. Conner were inside for the service, they left seven-year-old Derek (who had autism) outside in the care of his two brothers, seventeen-year-old Keith and nineteen-year-old Karl. Keith and Karl played guitar on the porch while they watched Derek, who was playing in the parking lot of the funeral home. Keith saw Derek "climbing on" a black, heart-shaped, granite headstone. According to Derek, he stood on the asphalt, reached up to the top of the headstone with both hands, and rocked it back and forth.[6] The headstone fell over, crushing Derek's right foot. Derek had multiple surgeries on his foot, but doctors ultimately had to amputate several of his toes.

During the approximately 20 years before Derek's injury, Sosebee Funeral Home had allowed Cartersville Monument Company to

---

[2] See Court of Appeals Rule 25 (a) (1), (c) (2) (i) and (iii).

[3] (Emphasis supplied.)

[4] (Punctuation and footnote omitted.) *Drew v. Istar Financial*, 291 Ga. App. 323 (661 SE2d 686) (2008).

[5] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[6] Immediately after the incident, Derek told Mrs. Conner that he had wanted to "show" her the headstone.

354

display several monuments behind the funeral home.[7] The headstone at issue in this case had been on display between one and five years before Derek's injury. Frank Perkins, the owner of Cartersville Monument Company, testified at deposition that he personally placed the 400-pound, heart-shaped, granite monument at Sosebee Funeral Home. The heart-shaped "die" was secured to the base solely by its own weight; Perkins did not use anything to attach the two pieces. According to Perkins, monuments installed in a cemetery were fastened to their bases with a setting compound, or putty. The monuments on display were not fastened or attached to their bases.

Perkins stated that he inspected the monuments on display at Sosebee Funeral Home by shaking them "to make sure nothing was leaning or wobbly or loose"; the inspections were not on any set schedule, but occurred approximately once every month or two. On one or two occasions, he secured loose monuments at Sosebee Funeral Home by raising them and placing a brick or concrete block to level them. Perkins could not recall the last time he checked the heart-shaped headstone involved in this case before Derek's injury, but he believed it was within three months of the incident.

Norman Sosebee, the owner and operator of Sosebee Funeral Home, testified that he had never known any of the monuments to be unstable, to fall, or to be pulled or pushed over. He was aware, however, that the heart-shaped monument in this case was not attached to its base.[8] Sosebee gave arguably conflicting testimony regarding inspection of the monuments. Initially, when asked whether he "check[ed] the monuments [himself] to make sure they were stable," Sosebee responded affirmatively, indicating that he would "[t]ake it and shake it, see if it would fall." He testified that he performed these inspections at "[n]o regular time. Just some-time[s] [he] would happen to be out there sweeping the yard." Sosebee recalled checking the headstone at issue in this case, but he did not know the last time he did so prior to Derek's injury. Then, when asked why he checked the monuments, Sosebee responded that "I didn't shake it to see if it would fall. I just touched it, you know. . . . I did not take the monument and say I am going to shake this thing and see if I can make it fall. I did not do that. . . . If I — if I touched it, it was just as a touch/shake/walking along, see if it was dirty. . . ." Sosebee then denied ever having concerns about the stability of the monument, and testified that he did not have any

[7] Sosebee Funeral Home did not charge the monument company a fee for the display, nor did the funeral home earn a commission or fee for sale of the monuments. Instead, the funeral home permitted the display as a benefit to its customers.

[8] Russell Wilson, a funeral director at Sosebee Funeral Home, was also aware that the monuments displayed in the parking lot were not attached at their bases.

policy or procedure for inspection of the monuments.

Sosebee further deposed that children regularly played outside of the funeral home during services, which he supported because he wanted them to be "allowed to come outside, not disrupt the dignity of the service and the viewing, and yet let them be children and have some time to play still, express themselves in a physical way." Sosebee warned children on multiple occasions not to climb on the railings or to play around the monuments. According to Sosebee, he did not believe that the monuments posed any danger to the children, but he was concerned that they could hurt themselves climbing on the railings. On the day before the incident, Derek and three to four other children (ranging in age from approximately six to twelve) were playing in the parking lot of the funeral home. Sosebee testified that he personally told Derek and the other children not to play on the monuments, the railings, the porch, or the ramp; Derek denied that Mr. Sosebee ever gave him such a warning. Mr. Sosebee concedes that he did not so warn the Conners, any other adult from the Conner family, or Derek's teen-aged brothers.

The Conners' expert, Christopher B. Shiver, testified via affidavit that the monument at issue was a heart-shaped headstone that rested on a base, with nothing securing it thereto. Shiver performed several tests on the monument, and he concluded that a minimum of 55 pounds of force would be necessary to tip over the monument and that Derek, who weighed approximately 79 pounds at the time of the incident, would be able to do so. Shiver ultimately concluded that "[the] unsecured monument constituted a dangerous and unsafe condition. . . ."

Sosebee Funeral Home moved for summary judgment, arguing that (1) the Conners failed to establish that the monument was a hazardous condition; (2) Sosebee Funeral Home had no actual or constructive knowledge that the monument constituted a hazardous condition; (3) the Conners failed to establish that any purported negligence on the part of Sosebee Funeral Home was the proximate cause of Derek's injury; (4) the Conners' negligent supervision of Derek was the proximate cause of his injury; (5) Derek's negligent conduct superceded any negligence of Sosebee as the sole and proximate cause of the injury; and (6) Sosebee Funeral Home was not liable for the actions of Cartersville Monument Company, an independent contractor. Following a hearing, the trial court granted the motion for summary judgment in a single-page order, concluding that "there is no genuine issue of material fact[,] and [s]ummary [j]udgment is proper in this case," without further explanation.

It is undisputed that Derek was an invitee on Sosebee Funeral Home property at the time of his injury. OCGA § 51-3-1 provides that an owner or occupier of land has a duty to exercise ordinary care

in keeping the premises and approaches safe. However, "an owner or occupier of land is not an insurer of the safety of its invitees. The mere occurrence of an injury does not create a presumption of negligence."[9] Thus, to recover for Derek's injuries, the Conners

> must prove that (1) the owner or proprietor had actual or constructive knowledge of the hazard and (2) the plaintiff lacked knowledge of the hazard despite exercising ordinary care. The true basis of a proprietor's liability for personal injury to an invitee is the proprietor's superior knowledge of a condition that may expose the invitees to an unreasonable risk of harm. Recovery is allowed only when the proprietor had knowledge and the invitee did not.[10]

Further, our Supreme Court has cautioned that

> the "routine" issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and that summary judgment is granted only when the evidence is plain, palpable, and undisputed.[11]

Guided by these principles, we address the parties' arguments in this case.

(a) *Superior Knowledge of the Hazard.* Sosebee Funeral Home contends that the Conners failed to present any evidence demonstrating that the funeral home had actual or constructive knowledge of the alleged hazard.[12] We disagree.

Clearly, the owner and at least one employer of Sosebee Funeral Home were aware that children regularly played behind the funeral home near and around the displayed monuments when the adults were inside the facility attending services. They were also aware that the monuments, including the one that injured Derek — a 400-pound, two-piece granite headstone consisting of a large, heart-shaped die resting on a base — were not secured to their respective

---

[9] (Punctuation omitted.) *Kennestone Hosp. v. Harris*, 285 Ga. App. 393, 394 (646 SE2d 490) (2007).

[10] (Citation and punctuation omitted.) Id.

[11] *Robinson v. Kroger Co.*, 268 Ga. 735, 748 (2) (b) (493 SE2d 403) (1997).

[12] Sosebee Funeral Home argues that the evidence demanded a finding that the monument was not a hazard. We disagree. The evidence in this case, including the expert's testimony and the fact that children regularly played on and around the heavy, heart-shaped monument, which was not secured to its base, with the knowledge and tacit approval of the funeral home's owner, created a question of fact.

bases. Although Mr. Sosebee was not aware of any previous incident involving a monument falling (or being pushed or pulled) over, he testified at one point that he felt compelled to check the stability of the monuments, including the one involved in this case, by "shak[ing them to] see if [they] would fall." Nevertheless, the funeral home did not have a regular inspection procedure (nor did it require Cartersville Monument Company to perform such inspections), and Mr. Sosebee was unable to recall when he last inspected the headstone before the incident. There was conflicting evidence regarding whether Mr. Sosebee warned Derek not to play on the monuments, and he admitted that he never so warned any other member of Derek's family or any adult in his party. Finally, there was no evidence that the Conners knew that the monuments were not secured to their bases. This evidence, construed in the light most favorable to the Conners, creates a jury issue regarding whether Sosebee Funeral Home had superior knowledge of the hazard.[13]

(b) *Sosebee Funeral Home's Remaining Arguments*. Because the grant of summary judgment to Sosebee Funeral Home may nonetheless be affirmed under the rule of "right for any reason," we next address Sosebee's remaining arguments.[14]

(i) *Contributory Negligence*. Sosebee Funeral Home contends that Derek's failure to exercise reasonable care for his own safety is the proximate cause of his injury. But this issue cannot be decided as a matter of law. "The question of a child's negligence is therefore one for the jury under appropriate instruction from the court."[15] And given the evidence here, we conclude that "this case does not fall within the category of those in which the danger is so plain that a child the age of [Derek] may be held as a matter of law to have assumed the risk. Instead, the question of whether [Derek] assumed the risk must be decided by a jury."[16]

(ii) *Negligent Supervision*. Consistent with our analysis in Division 2 (a), we conclude that Sosebee Funeral Home has not demonstrated as a matter of law that the Conners' failure to properly supervise Derek was the direct and proximate cause of his injury.

(iii) *Independent Contractor Doctrine*. Sosebee Funeral Home argues that it is entitled to summary judgment because it is not liable for any negligent actions of Cartersville Monument, an inde-

---

[13] See *Brown v. Wal-Mart Stores*, 294 Ga. App. 424, 426-427 (669 SE2d 221) (2008); *Kennestone Hosp.*, 285 Ga. App. at 395-397 (1); *Rozy Investments v. Bristow*, 276 Ga. App. 278, 279-280 (4) (623 SE2d 171) (2005).

[14] See *Sharfuddin v. Drug Emporium*, 230 Ga. App. 679, 681 (2) (498 SE2d 748) (1998).

[15] *Pearson v. Small World Day Care Center*, 234 Ga. App. 843, 845 (2) (b) (508 SE2d 200) (1998), citing *Ashbaugh v. Trotter*, 237 Ga. 46 (226 SE2d 736) (1976).

[16] *Pearson*, 234 Ga. App. at 846 (2) (b).

pendent contractor, citing *McDaniel v. Peterborough Cablevision, Ltd.*[17] *McDaniel* provides that

> [g]enerally, an employer is not responsible under the theory of respondeat superior for the torts of one employed as an independent contractor. . . . In an employer-independent contractor relationship, the employer has the right merely to require results in conformity with the employment agreement, and the independent contractor retains the right to perform the work by his own means, method and manner.[18]

But the Conners are not alleging claims against Sosebee Funeral Home under the theory of respondeat superior. Instead, they allege that Sosebee Funeral Home's liability arises out of its failure to exercise ordinary care in keeping its premises safe. Thus, Sosebee Funeral Home's reliance on *McDaniel* is misplaced.

*Judgment reversed. Blackburn, P. J., and Adams, J., concur.*

DECIDED MARCH 8, 2010 —
RECONSIDERATION DENIED APRIL 2, 2010 —

*Weinstock & Scavo, Jan P. Cohen, Richard V. Merritt*, for appellants.

*Downey & Cleveland, George L. Welborn*, for appellee.

---

[17] 206 Ga. App. 437 (425 SE2d 424) (1992).

[18] Id. at 438.