## A10A0077. HANKLA et al. v. JACKSON et al.
(699 SE2d 610)

DOYLE, Judge.

Zamarion Everett sustained a permanent brachial plexus injury[1] during his birth in 2003. His mother, Anita Jackson, filed the instant medical malpractice action, individually and as next friend of Everett, against Certified Nurse Midwife Vickie Hankla, who attended the birth, and Hankla's employer, Southern OB-GYN Associates, P.C. (collectively "Hankla"). Jackson argued that Hankla breached the standard of care during delivery when she applied lateral traction[2] with enough force to cause Zamarion's injury during her attempts to deliver him during an obstetrical complication known as shoulder dystocia, which occurs when an infant's shoulders become lodged in

---

[1] The brachial plexus is a bundle of nerves at the base of the neck that control arm and hand movement.

[2] Lateral traction is the force applied to the infant's head and neck when a provider moves the head to one side or another with the ear moving toward the shoulder.

the mother's pelvis after delivery of the head.

Hankla filed motions to exclude the testimonies of Jackson's expert witnesses, R. H. Allen, Ph.D., and Edith D. Gurewitsch, M.D. The trial court denied the motions to exclude, finding that the two witnesses were "qualified as experts in regards to matters involved in this civil matter." Upon the trial court's grant of a certificate of immediate review, the defendants applied for interlocutory appeal of the trial court's denial of their motions to exclude; this Court granted the application. We affirm in part and reverse in part for the reasons that follow.

1. Hankla argues that the trial court abused its discretion by denying her motion to exclude the testimonies of Allen and Gurewitsch without first determining that their expert opinions were reliable and relevant pursuant to OCGA § 24-9-67.1 (b) and *Daubert v. Merrell Dow Pharmaceuticals*.[3]

"We review a trial court's ruling on a motion in limine for abuse of discretion. A motion in limine is properly granted when there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial."[4]

(a) Hankla first argues that the face of the trial court's order establishes that it applied the incorrect standard by determining only that Allen and Gurewitsch were "qualified" without also determining whether their testimonies were reliable and relevant. The trial court, however, cited *Daubert* in its order and determined that the testimonies were admissible under *Daubert's* guidelines as well as the guidelines of OCGA § 24-9-67.1. Thus, this argument is without merit.

(b) Next, relying heavily on this Court's opinion in *Hawkins v. OB-GYN Assoc.*,[5] Hankla contends that the trial court erred because Allen's and Gurewitsch's testimonies (1) failed to rule in a suspected cause of the injury, (2) failed to rule out other potential causes of the injury, (3) were based on an assumption that Hankla applied excessive traction that was not supported by the record based on her deposition testimony, (4) were based on the mere existence of the injury, which is prohibited in medical malpractice actions, and (5) have not been subject to testing or peer review. We disagree that the trial court erred and affirm the order denying the motion in limine to

---

[3] 509 U. S. 579 (113 SC 2786, 125 LE2d 469) (1993).

[4] (Punctuation and footnote omitted.) *Shiver v. Ga. &c. Railnet*, 287 Ga. App. 828, 828-829 (1) (652 SE2d 819) (2007).

[5] 290 Ga. App. 892 (660 SE2d 835) (2008).

exclude the two experts' evidence.

> Applying the *Daubert* standard, expert testimony is admissible if it is both relevant and reliable. And the Georgia statute provides that expert testimony is admissible if: (1) the testimony is based upon sufficient facts or data which are or will be admitted into evidence at the hearing or trial; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case.[6]

(i) Gurewitsch is an assistant professor of obstetrics and gynecology and biomedical engineering at Johns Hopkins University, and she is board-certified in obstetrics and gynecology and maternal fetal medicine. Gurewitsch has performed numerous deliveries over her career as an obstetrician and has supervised midwives for the last eleven years, and she encounters shoulder dystocia in approximately three or four deliveries per year — approximately thirty to forty over her career. Gurewitsch deposed that approximately ten of those infants experienced a brachial plexus injury, one of whom sustained a permanent injury. She has been published extensively in peer-reviewed publications and has conducted clinical research on actual and simulated deliveries.

Gurewitsch deposed that based on her review of the medical records, including "[t]he neurological exam, EMG, and MRI" as well as Hankla's notes from delivery, "the nature and extent of injury, [her] research, training[,] and experience," Hankla "unnecessarily" applied excessive traction to Zamarion in an attempt to deliver his shoulders, causing the permanent brachial plexus injury to his right side.

Specifically, she explained that

> there is an injury to the posterior shoulder that is of a very severe nature and it involved the entire plexus, and an unusual sensory component to that injury which implies a locus of injury near the spinal cord. That locus of injury and the fact that all roots, all levels were involved, requires more than [forty] pounds of traction, which is at least four times what is normally used and at least twice as much as — would be the standard of care in a shoulder dystocia.

She also ruled out an inter-uterine injury, explaining that Zamarion showed no evidence of withering or lack of bulk in the affected arm,

---

[6] (Punctuation and footnotes omitted.) *Shiver*, 287 Ga. App. at 829 (1).

which would be apparent if the injury had resulted during gestation from the fetus's movements or as a result of a uterine mass or other maternal characteristic. Gurewitsch addressed the issue of brachial plexus injuries caused by normal maternal expulsive forces during labor and opined that a permanent injury such as Zamarion's could not result from such forces and that no such case had been reported in medical literature. Gurewitsch cited numerous studies that she had performed and published on the topic as well as studies published by other authors in support of her opinions.

Contrary to Hankla's assertion, she does not conclude that simply because there was a brachial plexus injury Hankla's negligence caused it, rather that based on "[t]he nature and extent of the injury" in conjunction with a "shoulder dystocia delivery," during which Hankla repeated the same obstetric maneuver followed by application of supra-pubic pressure in order to free Zamarion's shoulders, evinced that Hankla applied "excessive traction" at some point during the four minutes she spent trying to free the shoulders. Gurewitsch opined that in some cases applying lateral traction with sufficient force to cause a permanent brachial plexus injury in order to free an infant from the birth canal does not mean that the birth attendant has violated the standard of care; however, based on the circumstances of this case, Gurewitsch believed that Hankla had breached the standard.

(ii) Allen has a Ph.D. in civil engineering from Carnegie Mellon University and has been involved in the study of birth mechanics since 1986. He has held a number of teaching and research positions at various universities, and in 2000, he moved to Johns Hopkins University, where he has been teaching and researching in the field of bio-engineering, with specific research work in shoulder dystocia. Allen has created birthing models for study of the effects of labor and delivery, and he has authored or co-authored numerous journal articles appearing in various peer-reviewed publications; the majority of the articles address issues related to shoulder dystocia or brachial plexus injuries. His opinions are premised on his own peer-reviewed research as well as his assessment of other literature in the field.

During Allen's deposition, he offered his opinion on the mechanism of brachial plexus injuries generally, normal forces applied on an infant during delivery by the mother's body and by physicians, normal physician behavior in applying lateral force to an infant's head and neck during a shoulder dystocia delivery (i.e., documented behavior indicating that repeated attempts at delivering an infant led to increased force applied by a physician with each attempt), and the biophysical mechanics of the obstetric maneuver employed by Hankla and its use to free an infant during a shoulder dystocia

delivery. Allen also deposed that based on Zamarion's medical records, Hankla's and Jackson's depositions, and other information regarding the birth, Hankla applied lateral traction to Zamarion at a force great enough to damage the brachial plexus nerve.

(iii) Based on this testimony, we cannot say that the trial court abused its discretion by denying Hankla's motion. Allen and Gurewitsch specifically ruled in Hankla's applied traction as the cause of Zamarion's injury, and they specifically ruled out all other potential causes of the injury. Allen and Gurewitsch based their opinions of causation on a number of factors related to the particular circumstances of Zamarion's delivery as well as their prior knowledge of permanent brachial plexus injuries and birth attendant behavior; their opinions were not merely based on the fact that the injury occurred.[7] Hankla's contention that Allen's and Gurewitsch's research has not been submitted to peer review or has not been tested is wholly without support in the record.

With regard to *Hawkins*, we determine that the opinion does not require reversal in this case. In *Hawkins*, the expert testified only that the physician's application of traction was "more probably than not" the cause of the injury in that case.[8] Here, Allen and Gurewitsch have presented extensive opinions regarding causation, in contrast to the opinion espoused by the expert in *Hawkins*.[9] Moreover, because Allen's and Gurewitsch's testimonies regarding the causation of the injury are premised on more than the mere occurrence of the injury, we are not required to reverse the trial court's order on the basis that the opinions may conflict with Hankla's testimony that she applied only gentle force during the delivery.[10]

Accordingly, we affirm the trial court's order with regard to Gurewitsch's testimony. With regard to Allen's testimony, although we find that he is qualified to render an opinion as to general causation with regard to brachial plexus injuries, and that his opinions are reliable and relevant, we reverse in part the trial court's denial of Hankla's motion to exclude his testimony, as stated in Division 2 below.

2. Hankla argues that the trial court abused its discretion by denying her motion to exclude Allen's testimony because he is a biomechanical engineer, rather than a doctor of medicine.

(a) First, Hankla contends that the trial court erred by denying her motion to exclude Allen's testimony on the basis that he inappropriately commented on the standard of care.

---

[7] See *EHCA Dunwoody v. Daniel*, 277 Ga. App. 783, 786-787 (1) (627 SE2d 830) (2006).

[8] *Hawkins*, 290 Ga. App. at 894 (1).

[9] Compare id.

[10] Compare id.

OCGA § 24-9-67.1 (c) states in pertinent part that

> . . . the opinions of an expert, who is otherwise qualified as to the acceptable standard of conduct of the professional whose conduct is at issue, shall be admissible only if, at the time the act or omission is alleged to have occurred, such expert: . . . (2) In the case of a medical malpractice action, had actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given as the result of having been regularly engaged in: [The active practice of such area of specialty or the teaching of his or her profession] and (C) . . . (i) *Is a member of the same profession. . . .*

Hankla explains that Allen characterized the lateral forces Hankla allegedly applied during delivery as "excessive"; however, the citation to the record that Hankla provides in support of her contention evinces no such statement.[11] Moreover, Jackson explained at the motion hearing that Allen would not be called to testify regarding the standard of care, and Allen deposed that he has never delivered a baby and does not consider himself competent as an expert to comment on the standard of care for physicians. Nevertheless, to the extent that Allen would characterize the traction used as excessive, we reverse. The trial court erred by failing to restrict Allen from commenting, even indirectly, on whether Hankla's actions were a breach of the standard of care.[12]

(b) Hankla also argues that the trial court erred by finding that Allen was qualified to be admitted as an expert on causation based on OCGA § 24-9-67.1 (c) because he is not a medical doctor.

The plain language of OCGA § 24-9-67.1 (c) applies to experts testifying about the "standard of conduct" in professional malpractice actions. Moreover, OCGA § 24-9-67.1 (b) explains:

> If scientific, technical, or other specialized knowledge will assist the trier of fact in any cause of action to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experi-

---

[11] See *Conner v. Norman Sosebee Funeral Home*, 303 Ga. App. 352, 353 (1) (693 SE2d 534) (2010) ("if we have omitted any facts or failed to locate some evidence in the record, the responsibility rests with appellants. As we have often stated, it is not our function to cull the record on behalf of a party") (punctuation omitted).

[12] See *Smith v. Harris*, 294 Ga. App. 333, 337 (1) (670 SE2d 136) (2008) (holding that the trial court abused its discretion by allowing a pharmacist to testify regarding a physician's standard of care).

ence, training, or education may testify thereto in the form
of an opinion or otherwise. . . .

Thus, we do not read OCGA § 24-9-67.1 (c) to prohibit in every
instance expert testimony regarding causation by those outside the
profession of the defendant alleged to have breached the standard of
care.[13]

With regard to the case at hand, looking to federal law,[14] we find
instructive *Bowers v. Norfolk Southern Corp.*[15] In that case, the
Middle District of Georgia explained the current state of federal law
regarding the admissibility of a biomedical engineer's opinion per-
taining to medical causation.[16] *Bowers* explains that

> [b]iomechanical engineers apply the principles in mechanics
> to the facts of a specific accident and provide information
> about the forces generated in that accident. They may also
> explain how the body moves in response to those forces, and
> determine what types of injuries would result from the
> forces generated. Thus, biomechanical engineering is
> closely related to, and may sometimes overlap with, the field
> of medicine. However, the two disciplines remain distinct.
> For instance, unlike medical doctors, biomechanical engi-
> neers normally do not diagnose and treat human physical
> ailments, conditions, diseases, pain, and infirmities.
>
> In the context of litigation, therefore, biomechanical
> engineers typically are found to be qualified to render an
> opinion as to the forces generated in a particular accident
> and the general types of injuries those forces may generate.
> However, biomechanical engineers ordinarily are not per-
> mitted to give opinions about the precise cause of a specific
> injury. This is because biomechanical engineers lack the
> medical training necessary to identify the different toler-
> ance levels and pre-existing medical conditions of individu-

---

[13] Indeed, all of the cases that have addressed this issue have premised exclusion of
testimony based on inadmissible commentary on the standard of care and not on causation.
See id.; *MCG Health v. Barton*, 285 Ga. App. 577, 581-582 (1) (647 SE2d 81) (2007) (issue of
qualification turns on the allegations of the complaint and not on the particular practice area
of the defendant physician); *Cotten v. Phillips*, 280 Ga. App. 280, 287 (633 SE2d 655) (2006)
(holding that OCGA § 24-9-67.1 does not require that a physician practice in the same specialty
in order to testify regarding breach of the standard of care by the defendant physician).

[14] See OCGA § 24-9-67.1 (f) (inviting this Court to draw on federal court decisions in
applying the standards under this Code section).

[15] 537 FSupp.2d 1343 (M.D. Ga. 2007).

[16] See id. at 1376 (B) (2).

als, both of which could have an effect on what injuries resulted from an accident.[17]

In *Bowers*, the court granted the motion to exclude the engineer's testimony with regard to specific medical causation in that case, finding that although the engineer "may have trained in physiology and taught basic courses at a medical school, the record [did] not reflect that he [had] any experience either in examining patients, or in treating and diagnosing medical conditions."[18]

We determine that a similar circumstance exists here. Allen is certainly qualified to render opinions regarding the myriad causes of brachial plexus injuries in general, the normal forces exerted by a mother and birth attendants during labor and delivery, and the current medical literature regarding causation of this type of injury. Turning to the complaint,[19] Jackson has alleged that Hankla violated the standard of care by applying lateral traction, which in turn caused Zamarion's injury. Jackson did not allege that Hankla failed to correctly diagnose the shoulder dystocia. Thus, the trial court correctly determined that the testimony Allen was qualified to provide was relevant to the issues presented in the complaint and should not have been excluded. Nevertheless, Allen does not have any experience diagnosing or treating brachial plexus injuries. Therefore, the trial court erred by failing to preclude Allen from providing expert testimony regarding any questions of medical treatment or diagnosis.[20]

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Ellington, J., concur.*

DECIDED JULY 14, 2010 —
RECONSIDERATION DENIED JULY 29, 2010 — 

*Coleman Talley, Gregory T. Talley, Edward F. Preston*, for appellants.
*Laura M. Shamp*, for appellees.

---

[17] (Citations and punctuation omitted.) Id. at 1377.

[18] Id. at 1378.

[19] See *MCG Health*, 285 Ga. App. at 581-582 (1).

[20] See id. See also *Berner v. Carnival Corp.*, 632 FSupp.2d 1208, 1211-1213 (II) (2) (S.D. Fla. 2009).