**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and BLACKWELL, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**June 19, 2012**

# In the Court of Appeals of Georgia

A12A0703. POSTELL v. HANKLA et al.

MIKELL, Presiding Judge.

In the first appearance of this medical malpractice case before this Court,[1] we summarized the underlying facts as follows:

> Zamarion Everett sustained a permanent brachial plexus injury[2] during his birth in 2003. His mother, Anita Jackson [Postell], filed the instant medical malpractice action, individually and as next friend of Everett, against Certified Nurse Midwife Vickie Hankla, who attended the birth, and Hankla's employer, Southern OB-GYN Associates, P. C. (collectively "Hankla"). [Postell] argued that Hankla breached the

---

[1] *Hankla v. Jackson* ("*Hankla I*"), 305 Ga. App. 391, 392 (699 SE2d 610) (2010) (interlocutory appeal of trial court's order denying defendants' motion to exclude testimony of plaintiff's medical experts; order affirmed in part and reversed in part, and case remanded).

[2] "The brachial plexus is a bundle of nerves at the base of the neck that control arm and hand movement." Id. at 392, n. 1.

standard of care during delivery when she applied lateral traction[3] with enough force to cause Zamarion's injury during her attempts to deliver him during an obstretrical complication known as shoulder dystocia, which occurs when an infant's shoulders become lodged in the mother's pelvis after delivery of the head.[4]

On remand, the case was tried before a jury, which found for the defense. The trial court entered judgment on the jury's verdict, and Postell[5] appeals, contending that the trial court erred in denying her motion to exclude the testimony of Hankla's expert witness, Dr. Sandra Brickman, and in restricting her cross-examination of Hankla's expert witness, Dr. Thomas Moseley, as to his financial interest in the outcome of the trial. We conclude that Brickman, a medical doctor, was not qualified under OCGA § 24-9-67.1 (c) (2) (D) to testify as to the standard of care of Hankla, a nurse midwife. Because the erroneous admission of Brickman's testimony as to Hankla's standard of care was not harmless, we reverse the judgment and remand for a new trial.

---

[3] "Lateral traction is the force applied to the infant's head and neck when a provider moves the head to one side or another with the ear moving toward the shoulder." Id. at 392, n. 2.

[4] Id. at 391-392.

[5] Postell filed the original complaint under the name Anita Jackson. She later changed her name by marriage, and she filed this appeal as Anita Jackson Postell.

2

"The issue of the admissibility or exclusion of expert testimony rests in the broad discretion of the court, and consequently, the trial court's ruling thereon cannot be reversed absent an abuse of discretion."[6]

1. Postell argues that Brickman was not qualified to testify as an expert witness in a medical malpractice action against a nurse midwife because Brickman had not supervised, taught, or instructed nurse midwives during three of the five years preceding Zamarion's birth, and therefore Brickman did not satisfy the requirements set forth in OCGA § 24-9-67.1 (c) (2) (D). Hankla does not contend that Brickman supervised, taught, or instructed nurse midwives during the requisite period; instead, Hankla argues that because Brickman met the "active practice" requirement found in OCGA § 24-9-67.1 (c) (2) (A), she did not need to meet the further requirements of subparagraph (D). This argument, however, is not supported by the language of the statute or by prior rulings of this Court.

OCGA § 24-9-67.1 (c) provides, in pertinent part:

[I]n professional malpractice actions, *the opinions of an expert*, who is otherwise qualified as to the acceptable standard of conduct of the

---

[6] (Punctuation omitted.) *Anderson v. Mountain Mgmt. Svcs.*, 306 Ga. App. 412, 413 (702 SE2d 462) (2010), citing *Cotten v. Phillips*, 280 Ga. App. 280, 283 (633 SE2d 655) (2006).

professional whose conduct is at issue, *shall be admissible only if*, at the time the act or omission is alleged to have occurred, *such expert*:

(1) *Was licensed* by an appropriate regulatory agency . . . at such time; *and*

(2) *In the case of a medical malpractice action, had actual professional knowledge and experience* in the area of practice or specialty in which the opinion is to be given *as the result of having been regularly engaged in*:

(A) The *active practice* of such area of specialty of his or her profession for at least three of the last five years. . . ; *or*

(B) The *teaching* of his or her profession for at least three of the last five years . . . ; *and*

(C) Except as provided in subparagraph (D) of this paragraph: (i) *[i]s a member of the same profession* . . . ; *and*

(D) Notwithstanding any other provision of this Code section, *an expert who* is a physician and, *as a result of having*, during at least three of the last five years immediately preceding the time the act or omission is alleged to have occurred, *supervised, taught, or instructed . . . nurse midwives, . . . has knowledge of the standard of care of that health care provider* under the circumstances at issue *shall be competent to testify as to the standard of that health care provider*. However, a . . . nurse

4

midwife . . . shall not be competent to testify as to the standard of care of a physician.[7]

As this Court has explained previously, the word "or" connecting subparagraphs (2) (A) and (2) (B), followed by the word "and" connecting subparagraphs (2) (B) and (2) (C), means that "a medical expert must show *either* 'active practice' or 'teaching' for 'at least three of the last five years,' but that whichever of these may be the case, the expert must *also* be 'a member of the same profession' as the person whose performance he is evaluating."[8] If the expert is not a member of the same profession, then the expert must qualify under subparagraph (D) in order to testify against the defendant provider. Hankla's expert, Brickman, a medical doctor, is not in the same

---

[7] (Emphasis supplied.)

[8] (Emphasis in original.) *Smith v. Harris*, 294 Ga. App. 333, 336-337 (1) (670 SE2d 136) (2008) (trial court abused its discretion in allowing pharmacist to testify concerning defendant medical doctor's violations of physician's standard of care). Accord *Hankla I*, supra at 396 (2) (a) (trial court erred by allowing biomechanical engineer expert to comment, even indirectly, on whether defendant nurse midwife's actions breached standard of care). See also *Ball v. Jones*, 301 Ga. App. 340, 343 (687 SE2d 625) (2009) (nurse was not qualified under OCGA § 24-9-67.1 to give expert affidavit regarding standard of care of physical therapist).

profession as Hankla, a nurse midwife.[9] Therefore, unless Brickman qualified under subparagraph (D), she was not competent to testify as to Hankla's standard of care.

Subparagraph (D) of OCGA § 24-9-67.1 (c) (2) allows a medical doctor to testify as to the standard of care of a nurse midwife where the doctor has knowledge of the nurse midwife's standard of care as the result of having "supervised, taught, or instructed" nurse midwives during the requisite time period. The record reflects, and Hankla makes no contrary contention, that Brickman did not supervise, teach, or instruct nurse midwives during at least three of the last five years immediately preceding Zamarion's birth on August 18, 2003, the time the negligence is alleged to have occurred. Brickman completed her residency in June 2000 and began the private practice of medicine in July or August of that year. She testified that she had not supervised or worked with nurse midwives since leaving her residency and entering private practice, that is, from August 2000 until after Zamarion's birth in August 2003. Because she had not supervised, taught, or instructed midwives during the three years prior to Zamarion's birth, Brickman did not meet the requirements set forth in

---

[9] See OCGA §§ 9-11-9.1 (g) (11), (12) (medical doctors are in separate profession from nurses); 24-9-67.1 (c) (2) (D).

6

subparagraph (D) and therefore was not qualified to testify as to the standard of care of a nurse midwife. In ruling otherwise, the trial court abused its discretion.[10]

Moreover, we cannot deem this error harmless, and Hankla does not contend otherwise. Brickman testified that, in her opinion, based upon a reasonable degree of medical certainty, Hankla complied with the standard of care. The jury heard two other witnesses for the defense give their opinion that Hankla complied with the standard of care: Dr. Moseley, president of defendant Southern OB-GYN Associates; and defendant Vickie Hankla herself. But Brickman's was the only expert testimony offered by defendants from a witness who was neither a defendant nor employed by a defendant. We conclude that Brickman's disinterested testimony as to Hankla's compliance with the standard of care was material,[11] and the erroneous admission of her testimony constituted reversible error.[12]

---

[10] See *Anderson*, supra at 417 (2) (physician expert was not qualified under OCGA § 24-9-67.1 (c) (2) (D) to testify as to a nurse's standard of care, absent proof that he had supervised, taught, or instructed nurses during relevant time period).

[11] Cf. *Griffin v. Bankston*, 302 Ga. App. 647, 652 (1) (b) (691 SE2d 229) (2009) (testimony of disinterested witness, a treating physician rather than a hired expert, "may have carried particular weight with the jury"; thus, erroneous limitation on cross-examination of witness was reversible error).

[12] See generally *Dept. of Transp. v. Petkas*, 189 Ga. App. 633, 641 (9) (377 SE2d 166) (1988) (whole court) ("If the jury was allowed to find facts based upon evidence which was erroneously admitted . . . , the judgment entered on that verdict must be reversed").

7

2. Postell contends that the trial court erred in prohibiting her from questioning Moseley, one of Hankla's experts, as to his bias due to his financial interest in the outcome of the litigation. Although litigants are entitled to conduct a "thorough and sifting" cross-examination of opposing witnesses,[13] "[c]ontrol of the nature and scope of cross-examination of a witness is a matter within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion."[14] We find no abuse of discretion here.

Postell asserts in her brief that the trial court prohibited her from eliciting evidence as to whether Moseley was a shareholder of defendant Southern OB-GYN. This assertion is not supported by the record. Postell was allowed to establish on cross-examination that Moseley was a shareholder in the defendant firm; that he had been a shareholder in the firm for over thirty years; and that he earned his livelihood from the defendant firm.

What Postell was not allowed to do was inquire into the amount of money Moseley derived from the practice and whether a plaintiff's verdict in this case would

---

[13] See OCGA § 24-9-64 ("The right of a thorough and sifting cross-examination shall belong to every party as to the witnesses called against him").

[14] (Punctuation and footnote omitted.) *Hamilton v. Shumpert*, 299 Ga. App. 137, 141 (2) (682 SE2d 159) (2009).

"come out of his pocket" because of Southern OB-GYN's limited insurance coverage. "[A]s a general principle, the jury is entitled to consider a witness's financial interest in a case. However, it is also settled law that evidence of a litigant's insurance is generally inadmissible."[15] Moreover, "the general rule is that evidence of the wealth or worldly circumstances of a party litigant is never admissible, except in those cases where position or wealth is necessarily involved."[16] The trial court did not abuse its discretion in imposing this limitation on Postell's cross-examination of Moseley.

*Judgment reversed. Miller and Blackwell, JJ., concur.*

---

[15] (Citations omitted.) *Chambers v. Gwinnett Community Hosp.*, 253 Ga. App. 25, 26 (1) (557 SE2d 412) (2001) (whole court) (introducing evidence of defendant's insurance coverage might motivate jury to award inflated damages), citing OCGA § 24-4-4 (in determining where the preponderance of evidence lies, the jury may consider all the facts and circumstances of the case, including the witnesses' "interest or want of interest"). Accord *Goins v. Glisson*, 163 Ga. App. 290, 292 (1) (292 SE2d 917) (1982) ("The fact of insurance should never be admitted, . . . except and to the extent that it is germane to the issues in the case and necessary for their resolution") (citation omitted).

[16] (Citations and punctuation omitted.) *First Fed. Sav. &c. v. Jones*, 173 Ga. App. 356, 357 (2) (b) (326 SE2d 554) (1985). Accord *Bailey v. Edmundson*, 280 Ga. 528, 534 (6) (630 SE2d 396) (2006).