**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL, J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 29, 2018**

# In the Court of Appeals of Georgia

A18A0100. STEPHENS v. CASTANO-CASTANO.

BETHEL, Judge.

This appeal arises from an accident in which Michael Stephens' vehicle collided with Yolanda Castano's vehicle. On appeal, Michael Stephens (the defendant in the underlying litigation) argues that the trial court erred: (1) in denying his motion to enforce a settlement agreement; (2) by prohibiting questioning and evidence regarding a treating physician's financial interest in the case; and (3) by excluding questioning and evidence related to the treating physician's potential bias and credibility. We decline to find that the trial court committed error when it denied Stephens' motion to enforce the settlement agreement and when it excluded evidence that Castano's attorney referred her to the treating physician. However, Stephens should have been permitted to introduce evidence of the treating physician's financial

interest in the case. Therefore, for the reasons that follow, we affirm in part and reverse in part.

*Alleged Settlement Agreement*

Following a car accident in which Castano claimed she was injured by a vehicle driven by Stephens, Castano retained legal counsel. On September 3, 2013, Castano's counsel sent a settlement demand for the $25,000 insurance policy limits to Stephens' insurer. In addition to requesting payment in the amount of the policy limits, the settlement demand letter indicated that settlement was contingent upon sworn affidavits from the insurer, insured, and defense counsel regarding the amount of insurance coverage available, and a limited release. The demand letter indicated that it would otherwise be withdrawn in 30 days, and that payment was to be made within that time.

Twenty days later, a representative from Stephens' insurer called Castano's counsel to indicate that it would pay policy limits, would work with defense counsel on the limited release, and that it was attempting to contact Stephens with respect to the affidavit. The insurance representative stated that she could not immediately issue the check and that she would have to wait until she was instructed to do so by defense counsel. Castano's counsel indicated that he would wait to hear from defense counsel.

On November 5, 2013, defense counsel contacted Castano's counsel via email "to facilitate the settlement of this matter." To that end, defense counsel requested the status of any liens resulting from the accident and drafting instructions for the settlement check. A little over an hour later, Castano's counsel responded with payment instructions for the check and stated that liens were being negotiated and would be paid from "this recovery" directly from their escrow account. Defense counsel requested confirmation that there were no Medicare or Medicaid liens and that a limited liability release had been requested (as opposed to a general release). Minutes later, Castano's counsel clarified that there were no Medicare or Medicaid liens and that a limited liability release was all that was needed.

However, one week later, Castano's counsel sent a letter to defense counsel claiming that Stephens and his insurer had failed to timely respond to the settlement demand, and that any payment of the policy limits would be rejected. Two weeks later, Stephens' insurer tendered the $25,000 settlement check and proposed limited liability release to Castano's counsel. Castano's counsel immediately rejected the tender, stating that the insurer's delays had been "unreasonable."

Castano filed suit against Stephens alleging negligence and negligence per se and requested damages and attorney fees. Stephens filed a motion to enforce the

3

settlement. Following a hearing, the trial court denied the motion, stating that by its express terms, the original offer contained in the demand letter had expired on October 5, 2013, and that the emails exchanged between the parties, alone, were not sufficient to constitute an offer and acceptance such that a new contract to settle between the parties could be inferred following the expiration of the original offer.

*Expert Witness*

Prior to trial, Castano filed a motion in limine to exclude any reference or suggestion that she was referred to Dr. Chappuis, the physician who performed her neck surgery, by her attorney or that her attorney assisted in securing funding for the treatment. Stephens objected, noting that the jury was entitled to consider Dr. Chappuis' financial interest in the case and potential bias, interest, or partisanship. Following oral argument, the trial court granted Castano's motion, noting that the attorney referral to the physician was not relevant, and that Dr. Chappuis would be entitled to collect on the amounts owed regardless of the outcome of the case, and that the lien on the lawsuit was merely security on the debt.

At trial, Stephens made an offer of proof to introduce testimony and evidence regarding Dr. Chappuis' financial interest and potential bias in the case.[1] The jury awarded a verdict of $700,000 against Stephens. This appeal followed.

1. Stephens argues that the trial court erred in denying his motion to enforce settlement. This Court applies a de novo standard of review to a trial court's order on a motion to enforce a settlement agreement. *DeRossett Enter., Inc. v. Gen. Elec. Capital Corp.*, 275 Ga. App. 728, 728 (621 SE2d 755) (2005).

> Because the issues raised are analogous to those raised in a motion for summary judgment, in order to succeed on a motion to enforce a settlement agreement, a party must show the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the appellant's case. Thus, we review the evidence in a light most favorable to the nonmoving party.

*Tillman v. Mejabi*, 331 Ga. App. 415, 415 (771 SE2d 110) (2015) (citation omitted).

(a) Stephens first argues that the trial court should have considered parol evidence (that is, the prior communications between the parties) to explain ambiguities in the email communications. He asserts that, following the initial letter

---

[1] Dr. Chappuis' video deposition, with financial interest information removed, was played for the jury at trial in lieu of live testimony.

from Castano demanding settlement within thirty days for policy limits (that was sent on September 3, 2013), Castano accepted a counter-offer contained in the November 5th email between the parties. The text of that email was: "We have been retained by [Stephens' insurer] to facilitate the settlement of this matter. Will you please provide me with the status of any liens resulting from this accident and the drafting instructions for the settlement check? Thanks, and I look forward to working with you to get this matter resolved." A little over an hour later, Castano's counsel responded that "we are negotiating the liens now and will pay them from this recovery directly from our escrow acct." Castano also included payment instructions for the check.

It is clear that the initial offer, set to expire within thirty days, was not timely accepted. *See Herring v. Dunning*, 213 Ga. App. 695, 699 (446 SE2d 199) (1994) ("The offer must be accepted in the manner specified by it; and if it calls for a promise, then a promise must be made; or if it calls for an act; it can be accepted only by the doing of the act."). *See also Penn v. Muktar*, 309 Ga. App. 849, 850-851 (711 SE2d 337) (2011) (offer to settle required insurance company to perform certain acts within 20 days of demand letter). Here, the demand letter expressly required that

payment be physically delivered to the office of Castano's counsel.[2] That did not occur. Therefore, Stephens relies upon the "counter-offer" contained in the November 5th email correspondence. However, after reviewing the language contained within that email, we do not agree that it constituted a "counter-offer" that was accepted and resulted in an enforceable agreement. *See Herring*, 213 Ga. App. at 697 ("If the offer is in any case so indefinite as to make it impossible for a court to decide just what it means, and to fix the legal liability of the parties, its acceptance can not result in an enforceable agreement." (citation omitted)).

> [I]n order for the contract[3] to be valid the agreement must ordinarily be expressed plainly and explicitly enough to show what the parties agreed upon. A contract cannot be enforced in any form of action if its terms are incomplete or incomprehensible. There are instances when certain deficiencies or ambiguities may be explained by facts aliunde to the instrument itself. However, information of such extrinsic nature may not be utilized to supply that which is essential to constitute a valid contract.

---

[2] Settlement for the $25,000 policy limit was also contingent upon sworn affidavits from the insurer and Stephens and a limited release.

[3] "Settlement agreements must meet the same requirements of formation and enforceability as other contracts." *Turner v. Williamson*, 321 Ga. App. 209, 212 (738 SE2d 712) (2013) (citation omitted).

*West v. Downer*, 218 Ga. 235, 241-242 (5) (127 SE2d 359) (1962) (citations omitted).
*See also Kreimer v. Kreimer*, 274 Ga. 359, 363 (2) (552 SE2d 826) (2001) ("It is well established that no contract exists until all essential terms have been agreed to, and the failure to agree to even one essential term means that there is no agreement to be enforced." (citation and punctuation omitted)). "If a contract fails to establish an essential term, and leaves the settling of that term to be agreed upon later by the parties to the contract, the contract is deemed an unenforceable 'agreement to agree.'" *Id.* (citation omitted).

Here, the amount of the proposed settlement, which is an essential element, was missing from the November 5th "counter-offer." Stephens would have us infer the amount from his prior letter containing the $25,000 settlement offer. But this is not a permissible use of parol evidence under these circumstances. *See Wiley v. Tom Howell & Assoc., Inc.*, 154 Ga. App. 235, 237 (267 SE2d 816) (1980) ("Parol or extrinsic evidence cannot supply the deficiency of the missing essential element.").

> Parol evidence, together will all the attendant and surrounding circumstances, may be proved to explain an ambiguity, latent or patent, in a contract . . . . Furthermore, an offer is not too indefinite if it can be made certain by reference to outside matters . . . . There is a difference between ambiguity, which imports doubleness and uncertainty of meaning, and that degree of indefiniteness which imports no meaning

8

at all. The former can be explained by parol. The latter cannot be merely explained, but a deficiency must be supplied.

*See S. Airways Co. v. DeKalb Cty.*, 102 Ga. App. 850, 859 (5) (118 SE2d 234) (1960) (citation and punctuation omitted). Moreover, it would be equally fair to read the November 5th email exchange as a simple exchange of information, wherein Stephens' counsel requested payment instructions and lien information so as to facilitate further settlement discussions. *See Hansen v. Doan*, 320 Ga. App. 609, 613 (1) (740 SE2d 338) (2013) ("a mere request for confirmation does not constitute a counteroffer"). Thus, because the November 5th email was indefinite and omitted an essential term, it did not result in an enforceable settlement agreement between the parties.

(b) In the alternative, Stephens argues that the settlement agreement should be enforced because there was a valid agreement between the parties and Castano waived any breach of conditions. Castano argues that Stephens waived this argument by failing to raise it before the trial court. We agree that Stephens failed to preserve this argument for appeal. *See Locke's Graphic & Vinyl Signs, Inc. v. Citicorp Vendor Fin., Inc.*, 285 Ga. App. 826, 828 (2) (a) (648 SE2d 156) (2007) ("An argument not

9

raised in the trial court is waived and cannot be raised for the first time on appeal."

(footnote omitted)). As such, we cannot consider it.

(c) Finally, Stephens argues that to the extent there was any ambiguity in the emails that could not be resolved by parol evidence, the jury should have decided whether there was a settlement. This argument fails because the "issue of contract construction is at the outset a question of law for the court." *Livoti v. Aycock*, 263 Ga. App. 897, 902 (2) (590 SE2d 159) (2003) (citation omitted). Here, the problem is not an ambiguity in the email communications between the parties, but rather that the communications were so indefinite that it failed to establish any enforceable agreement at all. This argument lacks merit.

2. Stephens next argues that the trial court erred in excluding certain questions and evidence that affected the credibility and bias of Dr. Chappuis, Castano's treating physician. The admission or exclusion of evidence "is generally committed to the sound discretion of the trial court, whose determination shall not be disturbed on appeal unless it amounts to an abuse of discretion." *Cooper Tire & Rubber Co. v. Crosby*, 273 Ga. 454, 456-457 (2) (543 SE2d 21) (2001) (footnote omitted).

(a) Stephens first argues that the trial court should have allowed him to question Dr. Chappuis and introduce evidence regarding his financial interest in the

case. Specifically, Stephens sought to introduce evidence at trial that Dr. Chappuis had a lien on any recovery in the case and that this constituted a financial interest in the outcome of the case. The trial court excluded the evidence because it was "unconvinced by Defendant's argument that because Plaintiff's treatment provider has a lien on the lawsuit proceeds that he is biased due to a financial interest in the case." The trial court found that the "lien" was "merely a security on Plaintiff's debt owed to the physician," and that the physician would be "entitled to collect on the debt regardless of the outcome of the case." However, Stephens argues that the lien is relevant because regardless of whether the amount was equally due and owing without it, the doctor was more likely to be paid the full amount owed if Castano was awarded damages in the suit. In response, Castano argues that the evidence was prohibited by the collateral source rule and should not be admitted under Rule 403. We agree that Stephens should have been allowed to question Dr. Chappuis regarding his financial interest in the case.

"Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. A party is entitled to a thorough and sifting cross-examination of the witnesses against him." *Bowen v. State*, 252 Ga. App. 382, 382-383 (556 SE2d 252) (2001) (citations and footnotes omitted). *See also*

11

*Postell v. Hankla*, 317 Ga. App. 86, 90 (2) (728 SE2d 886) (2012). "As a general principle, the jury is entitled to consider a witness's financial interest in a case." *Postell*, 317 Ga. App. at 90 (2) (footnote omitted).

"The collateral source rule, stated simply, is that the receipt of benefits or mitigation of loss from sources other than the defendant will not operate to diminish the plaintiff's recovery of damages." *Polito v. Holland*, 258 Ga. 54, 55 (3) (365 SE2d 273) (1988) (citation omitted). Thus, the "collateral source rule permits an injured party to recover damages from a defendant notwithstanding that the plaintiff received compensation from other sources." *Bennett v. Haley*, 132 Ga. App. 512, 522 (16) (208 SE2d 302) (1974). The underlying rationale for this rule is that "a tortfeasor is not allowed to benefit by its wrongful conduct or to mitigate its liability by collateral sources provided by others." *Kelley v. Purcell*, 301 Ga. App. 88, 91 (686 SE2d 879) (2009) (citation omitted). Because of this rule, "evidence of collateral benefits is not generally material." *Polito*, 258 Ga. at 56 (3).

Here, however, there has been no "receipt of benefit or mitigation of loss" from other sources. Castano still owes the full costs of her treatment and her obligation has not been reduced. The evidence sought to be introduced by Stephens is not payment of Castano's medical bill by some third party, nor does it show a write-off, waiver,

12

or reduction of the bill, as may lead a jury to reduce improperly a plaintiff's award of damages. Rather, Stephens simply sought to introduce evidence that Dr. Chappuis entered into an arrangement whereby the physician would be paid from the proceeds of Castano's recovery. Thus, excluding this evidence did not serve the underlying rationale of the collateral source rule. *See, e.g.*, *Rangel v. Anderson*, 202 F. Supp. 3d 1361, 1372-1373 (II) (S.D. Ga. 2016).

Furthermore, Dr. Chappuis' financial interest in the outcome of the case is highly relevant to the issue of his credibility and potential bias, as Dr. Chappuis has become an investor of sorts in the lawsuit. If Castano receives a large verdict amount, then Dr. Chappuis has a near certain chance of fully and quickly recovering the costs of the treatment provided to Castano at no initial cost. On the other hand, if Castano does not recover at trial, Dr. Chappuis' chances of being fully reimbursed are more doubtful. Thus, the expert witness has a financial motivation to testify favorably for Castano, and the probative value of this testimony outweighs its prejudicial effect. *See Lloyd v. State*, 40 Ga. App. 230, 231 (149 SE 174) (1929) ("The intent or motive of a witness is a legitimate subject of inquiry, and the fact that a witness, in his connection with any pending litigation, is influenced by financial considerations may affect his credit and diminish the weight of his testimony." (citations and punctuation

13

omitted)). Consequently, the jury should consider the relationship between Castano and Dr. Chappuis when assessing the credibility of that physician's testimony.[4] *See* OCGA § 24-6-622 ("The state of a witness's feelings towards the parties and the witness's relationship to the parties may always be proved for the consideration of the jury."); *Chrysler Group, LLC v. Walden*, No. S17G0832, 2018 WL 1323992, at *7 (Ga. March 15, 2018) (evidence of a witness's compensation package from defendant company made existence of bias in favor of that defendant more probable).[5]

(b) Lastly, Stephens argues that he should have been permitted to inquire into Castano's referral to Dr. Chappuis by her attorney because that information was relevant to the witness's credibility and bias. The trial court relied on *Waits v. Hardy*[6] in concluding that the information was not relevant. Under the facts of this case, we do not find that the trial court abused its discretion in excluding this evidence.

---

[4] Castano cites *Vol Repairs II Inc. v. Knighten*, 322 Ga. App. 416 (745 SE2d 673) (2013) in support of her argument that the trial court properly excluded evidence of Dr. Chappuis' financial interest in the case. However, under the particular facts of that case, the trial court did not abuse its discretion in deciding that the line of questioning was likely to run askew of the rule. *Id.* at 421 (3).

[5] Although not raised by the parties, we note that this evidence, like all evidence under our Evidence Code, is subject to a Rule 403 analysis.

[6] 214 Ga. 41, 44 (3) (1958).

In *Waits*, the Supreme Court of Georgia held that the trial court did not abuse its discretion when it opted not to instruct the jury that comments by defense counsel that the plaintiff did not visit a doctor until told to do so by his attorney and that the action was a "trumped-up lawsuit" were improper and should be disregarded. *Id.* at 42-43. Instead, the trial court instructed the jury that the lawyers' contentions were not evidence and should not be considered as such. *Id.* In so holding, the Supreme Court agreed with the trial court that the comments did not charge plaintiff's counsel with "being a party to a fraudulently framed-up lawsuit." *Id.* at 44. The Supreme Court went on to state that mentioning that

> the plaintiff in a personal injury suit did not go to a doctor until his lawyer sent him does not charge the lawyer with wrongful conduct. On the contrary, it would seem that a lawyer in accepting employment in a personal injury case would logically tell his client to be examined by a doctor before he proceeds with the case, so that he may know whether his client has suffered any injury or damage; otherwise, he might have a case of clear liability where there is no injury or damage sustained.

*Id.*

While *Waits*[7] does not address the issue before us — that is, whether a referral to a physician by plaintiff's counsel affects that physician's credibility and bias — we agree that, under the facts of this case, the trial court did not abuse its discretion by excluding evidence of Castano's referral to Dr. Chappuis by her attorney as irrelevant.

Relevant evidence is that "which logically tends to prove or to disprove any material fact which is at issue in the case, and every act or circumstance serving to elucidate or throw light upon a material issue or issues is relevant . . . . [W]here the relevancy or competency of evidence is doubtful, it should be admitted and its weight left to the determination of the jury." *Pound v. Medney*, 176 Ga. App. 756, 759 (1) (337 SE2d 772) (1985) (citation omitted). Relevant evidence may also be admitted to support an inference of bias. *See Chrysler Group, LLC*, 339 Ga. App. at 743 (5).

---

[7] In the second appeal of the case, *Waits v. Hardy*, 214 Ga. 495 (105 SE2d 719) (1958), the Supreme Court of Georgia considered the admission of certain hearsay evidence — that is, testimony that the plaintiff was referred to the doctor by her lawyer. In determining that the hearsay evidence was not so harmful as to necessitate a new trial, the Supreme Court held, without explanation, that "who referred the plaintiff to the doctor was in effect immaterial." *Id.* at 495. While this Court appreciates those arguments advanced in the amicus brief, we do not take this to mean that an attorney referral to a physician will always be irrelevant in every circumstance and is therefore inadmissible evidence.

16

Bias is a term used in the common law of evidence to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.

*Id.*

In this case, we do not find the attorney referral to Dr. Chappuis, standing alone, to be sufficient to affect Dr. Chappuis' credibility or to show bias. At most, there is a suggestion of unseemliness which creates a danger of unfair prejudice and confusion of the issues before the jury. Therefore, without more, we cannot find that the trial court abused its discretion by excluding this evidence.

*Judgment affirmed in part and reversed in part. Senior Appellate Judge Herbert E. Phipps, concurs. Ellington, P. J., concurs in judgment only.**

**\* THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2 (a)**

17